LAWSON G. CARTER

*v.*

SARAH CARTER.

62   439
27a  398
62   439
138  439
62   439
171  639

1. DIVORCE—*desertion.* Where the wife has absented herself from the house of her husband for more than two years before suit is brought for divorce, she must show, by a preponderance of evidence, that she was justified in so absenting herself, in order to prevent her husband from obtaining a divorce for such cause.

2. SAME—*conduct justifying desertion.* To justify a wife in leaving her husband, and absenting herself without giving him cause for divorce after the statutory period, it seems that his conduct must have been such as to authorize a divorce in her favor.

3. SAME—*cruelty.* On the trial of a bill by the husband, and cross bill by the wife, for divorce, where the husband relied on desertion for the space of two years, and the wife charged him with extreme and repeated cruelty, and adultery, it appeared that the husband had made demonstrations of personal violence when highly excited by great provocation and wanton insult on the part of the wife, but committed no personal violence in fact; and it also appeared that the wife provoked the difficulty as a pretext for separation, and that the husband was a man of good disposition, a good citizen, and truthful: *Held,* that in view of the provocation, the acts of the husband were not such extreme cruelty as to entitle the wife to a divorce, or justify her abandonment of her husband.

4. ADULTERY—*proof of.* A husband, after his wife left him, employed a widow woman to keep house for him, and, to avoid scandal, kept during the time a hired girl in the house, and it appeared that such help was nec-

essary to enable him to carry on his farm. The wife, in a suit for divorce, attempted to prove that the widow's character for chastity was bad, to show that her husband was guilty of adultery with this woman, but no improper acts between them were proved : *Held,* that evidence of the general character of such widow was inadmissible to prove adultery ; and that if her character had been shown to be bad, her employment, under the circumstances, was no evidence of adultery on the part of the husband.

5. The fact that the husband, after his wife left him, employed a man and his wife to come and stay at his house for a few days, although the character of the man's wife, for virtue, may not have been good, does not prove the husband's adultery, unless it is also shown that they were employed for improper purposes.

6. ADULTERY. The charge of adultery must be shown by proof of acts and circumstances that convinces the mind by a preponderance of its weight, and not by mere suspicion or conjecture from vague or indefinite circumstances pointing to no specific time, place, or act. Hence, evidence that defendant's character for virtue was not good, is not admissible on a charge of adultery. Nor is hearsay, or neighborhood rumor and gossip.

7. SAME. The fact that a husband, during his wife's absence, visited, on one or two occasions, female friends, and at one or more times was seen riding in a carriage with females, when the attendant circumstances failed to show that he acted improperly on such occasions, does not prove his adultery.

8. SAME—*proof of.* When immorality or wrong is imputed, such as adultery, it must be established by at least a preponderance of proof; and when the facts or circumstances relied upon to establish the same, may as well import innocence as guilt, they must be held to import innocence.

9. DIVORCE—*desertion, instruction.* On the trial of the issues in a suit by a husband for divorce, on the ground of the wife's desertion, the court, at the instance of the wife, instructed the jury that they should determine, from all the facts and circumstances, what constituted a reasonable cause of abandonment : *Held,* that although the court, in other instructions, properly stated what acts of the husband would constitute reasonable cause, the court erred in giving this, as it was uncertain which the jury followed.

APPEAL from the Circuit Court of Adams County; the Hon. JOSEPH SIBLEY, Judge, presiding.

This was a bill for a divorce brought by appellant, in the McDonough circuit court, and taken by change of venue to the circuit court of Adams county. Appellee filed a cross bill, also claiming a divorce on the ground of cruel treatment

and adultery on the part of the complainant. The testimony is lengthy, but its substance is stated in the opinion of the court.

The complainant asked the court to give the following instructions:

1. The jury are instructed, that it is necessary for either party, in this case, to establish their respective allegations presented by their pleadings by a preponderance of the evidence in the case.

2. The jury are further instructed, that the only issue presented by the pleadings in this case for your consideration is, whether or not the complainant and defendant were living together as husband and wife, in the county of McDonough, and State of Illinois, on the 3d day of February, A. D. 1868, and whether or not, on that day, the defendant wilfully, and without just or reasonable cause, deserted the complainant and his said home, and whether or not the defendant had wilfully remained absent therefrom, without just or reasonable cause, for the space of two years prior to the filing of the complainant's bill for a divorce.

3. The jury are further instructed, that it is wholly immaterial in this case, whether or not the complainant has committed adultery with Margaret Sailors, or any other woman, since the filing of his bill for a divorce.

4. The jury are also instructed, that adultery can not be presumed, but must be alleged and clearly established by a preponderance of the evidence; and unless the jury clearly believe, from the evidence in the case, that the complainant did, prior to the time of filing his bill herein, commit adultery with Margaret Sailors, or Mrs. Lockhart, or Mrs. Neal, the defendant was not justified in leaving complainant, and remaining absent for the space of two years immediately prior to the filing of his bill of complaint herein, simply because of any suspicion of adultery which defendant might entertain, as between complainant and these women, or either of them, and no more.

5.   The jury are also further instructed, that the law does not allow the jury to presume the adultery of the complainant where the facts or circumstances relied upon to establish the same may be as well attributed to an innocent intent or motive as a guilty one.

6.   The jury are instructed, that if they believe, from a preponderance of the evidence, that at the time defendant left complainant (if she did leave at all), complainant was at the head of a family, and living upon and carrying on a farm, and that he continued to so reside there up to the time of filing his bill herein, he had a perfect right to employ a housekeeper or housekeepers during that time, and to associate with them, or to visit his neighbors and female acquaintances.

7.   The jury are instructed, that if they believe, from the evidence in this case, that Mrs. Nancy Cooper was asked a question, upon her first examination in this case, which was broad enough to have enabled her to have related the conversation with complainant, which she relates in her second deposition as to complainant having committed adultery, and that on said first examination she neglected to testify as to said conversation, such neglect is a circumstance to be taken into consideration by the jury in determining what weight to give to her evidence.

8.   The jury are instructed, that the evidence of the witness, Mrs. Nancy Cooper, in her second deposition as to the admission of complainant to her, that his wife, meaning the defendant, had forced him to commit adultery, cuts no figure in this case, unless the jury believe, from a preponderance of the evidence, that complainant had committed adultery with Mrs. Margaret Sailors, or Mrs. Neal, or Mrs. Lockhart prior to the time of filing his bill of complaint.

9.   The jury are instructed that it is necessary for the defendant to prove, by a preponderance of the evidence, that the complainant actually committed an act, or acts of personal violence to the person of the defendant prior to the time of the alleged desertion, and that threats of violence, abusive

language, or violent sallies of passion are not such violence as will justify a desertion.

10.    The jury are instructed, that such cruelty as would authorize a married woman to leave the house or home of her husband must be acts of physical violence upon her person, inflicted by him, or such demonstrations of actual violence made by him toward her as would induce a well-grounded fear in a reasonable mind that such violent injuries would be inflicted upon her by her husband, in case she remained, and that abusive language or mere assault, without battery, does not constitute such cruelty as is contemplated by law.

12.    The jury are instructed, that in determining the weight to be given to the evidence of the witnesses in this case, they are authorized to consider the relationship, if any, to the parties herein, their temper, feeling, or bias, if any is shown, their demeanor while testifying, their means of information, and to give such credit to their evidence as under all the circumstances said witnesses shall seem entitled to.

13.    If the jury believe, from a preponderance of the evidence, that the defendant deserted the complainant at two different times before the 3d day of February, A. D. 1868, even with a justifiable cause, and subsequently returned each time to complainant, and lived with him as his wife up to the 3d day of February, A. D. 1868, then all such former acts of violence which took place prior to the time she last returned, in the year A. D. 1863, if she did so return, were, in the law, condoned by her; and unless the jury further believe, from the preponderance of the evidence, that the defendant received such personal violence at the hands of the complainant as would justify her desertion, subsequent to said time of her return, in A. D. 1863, if she did return, and live with complainant up to February 3, A. D. 1868, inclusive, the jury should find the allegations of cruel treatment against the defendant.

The court gave all of said instructions, except those num-

bered 5, 9, 10, and 13. At the request of defendant the court gave the following instructions :

2. That if the jury believe, from the evidence, that complainant, before the separation of the parties, was guilty of extreme and repeated cruelty toward defendant for the space of two years or more, that defendant was justified in leaving him, and the jury should find the issues for the defendant.

3. That if the conduct of complainant was such toward defendant, before the said separation, as to induce, in the mind of a reasonable woman, a well-grounded fear of her life, or of great bodily injury, if she remained and lived with said complainant, and that she was actuated solely by such fear during the two years immediately after said separation, being such as would be inspired by all the circumstances in the mind of a reasonable woman during all that time, then the jury should find that the defendant is not guilty of the wilful abandonment, without reasonable cause, as charged in the bill of complaint.

5. That facts tending to show that the complainant has been guilty of adultery with Mrs. Sailors, or any other woman, either prior to the separation spoken of by the witnesses, or after that time, and before the commencement of this suit, are proper for the consideration of the jury in determining the issues in this case.

6. The only issue for the jury to try in this cause is, whether the defendant deserted or absented herself from the complainant, without any reasonable cause, for the space of two years prior to the commencement of this suit, and what constitutes such reasonable cause of abandonment, is a matter to be determined by the jury, from all the facts and circumstances in evidence in the case.

The jury found the defendant not guilty of wilful desertion without reasonable cause.

The complainant entered a motion for a new trial, which was overruled.

Messrs. BAILEY & COLE, for the appellant.

Messrs. STEWART & PHELPS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellant filed a bill in the McDonough circuit court against appellee to obtain a divorce. The bill alleged wilful desertion, without any reasonable cause, for the space of more than two years. Appellee answered, and filed a cross bill, setting up, as a justification, extreme and repeated cruelty and adultery on the part of the husband. A replication was filed to the answer, and an answer to the cross bill, denying the charge of cruelty and adultery. A trial was had resulting in favor of defendant, whereupon the court dismissed the original bill, and, under the cross bill, decreed her an annual allowance of three hundred dollars, payable semi-annually, as a separate maintenance. Complainant has appealed to this court and asks a reversal upon the ground that the evidence does not sustain the verdict and decree.

We have examined the evidence with much care, and are constrained to hold that the objection is well taken. It is not contested that appellee absented herself from the home of appellant for more than two years before the original bill was filed, and it devolved upon her to show, by a preponderance of evidence, that it was justified. While appellee testifies to a number of acts of cruelty, extending over a series of twenty-seven years, her story seems to be extremely improbable. That she would have remained with appellant, and make no complaint, or even communicate to any person in the neighborhood, the fact that appellant had, on more than one occasion, administered to her poison, and had attempted to shoot her and stealthily attempted to cut her throat, and not at the time have left him and communicated the fact to the neighbors, is so extremely improbable that we can not give it credence unless it was supported by corroborating evidence. It has every ap-

pearance of the vagaries of a crazed or distempered imagination.

Again, these charges are totally denied by appellant. He is explicit and positive in his contradiction of each and all of these charges. When she says, that he, while riding in a carriage with her, attempted to drive over a precipice, or such a place as would have produced her death, she does not seem to remember that it involved the destruction of his own life. As to all of these charges we think them so extremely improbable that, uncontradicted, we could not hold that they would have justified the decree, as some of them are unreasonable, and her conduct seems to contradict all of them. Had such attempts been made upon her life she would, undoubtedly, have left appellant and have made it known to her friends, and commenced legal proceedings. That her imagination is diseased seems to be more than probable. Her account of being choked in her sleep until life was almost extinct, and not be aware of the fact until she, next day, saw the prints of fingers on her neck is improbable. Such evidence seems to be entirely worthless.

As to the difficulty that occurred at the time when the separation took place, it appears that appellant was highly excited, and was acting under great provocation. When he was so wantonly insulted by appellee it was but natural that he should lose his temper, and he may not have restrained it, and have avoided its energetic manifestations to the extent that he should, and others might have done. But when he simply informed appellee that he did not want her to sell any more honey, for her to reply that he lied, was well calculated to throw the coolest and best balanced temper off its balance. So far as we can see, the insult was unprovoked, unexpected, and entirely wanton. And it was not to be expected that appellant would remain calm under such a provocation. He may have made demonstrations that were violent, and even improper, in a man of strong will and self-government, but when the weakness of human nature is considered, we are not prepared to hold, that, under the provo-

cation, it was extreme cruelty. He did no personal violence to appellee, although he made demonstrations that may have induced her to believe she was in danger; but it must be remembered that she provoked it, and seems to have been seeking to induce such action as would afford an excuse for a separation, as such a thing had been previously spoken of by the parties.

But in this altercation, appellee does not pretend that she received any personal injury, but says he struck at, and attempted to kick her. This, appellant denies, in the most emphatic terms, as well as all other specific charges. Again, persons who lived in the family all concur in saying, so far as they saw, he treated her kindly and properly. His neighbors speak well of him as a man of good disposition, a good citizen, and a truthful man. It would be strange, if he had treated appellee as she claims, that their children, persons living in the family, and their neighbors, with whom they had lived for years, never had discovered the fact.

To have been justified in leaving her husband, his conduct should have been such, as if continued for the statutory period, would have authorized the decreeing of a divorce. In the attempt to show such facts we think appellee has wholly failed in her proof. That an altercation occurred is true, but it was sought and produced by her own acts. Appellee having deserted appellant, without reasonable cause, for the space of more than two years before the bill was filed, he was entitled to a divorce, unless it is shown that he was guilty of adultery, as charged in the cross bill and answer.

There was much testimony taken to prove that appellant was guilty of adultery with different women. In this we think there was an entire failure. It is true, that after appellee left, appellant employed a widow to keep house for him, but as a matter of precaution against scandal he also kept in the house a hired girl during the time. And no improper acts between them were proved. Much testimony was taken that, at most, could only raise a suspicion. An attempt was made to show that this woman was not virtuous, but her

character seems to have been sustained by those who were most intimately acquainted with her, and who lived in her neighborhood.

But had the evidence shown that her character was not good, that of itself would not have proved the charge. The mere fact that appellant employed a housekeeper, which was rendered necessary to enable him to carry on his farm by appellee's desertion, does not prove adultery. Nor do we find other evidence in this record from which it can be reasonably inferred. The fact that he employed a man and his wife to come to his house a day or two, although the wife's character for virtue may not have been good, does not prove adultery by appellant. The labor they were hired to perform seems to have been necessary and proper, and until shown to have been for improper purposes, should not fix the charge of adultery on appellant.

The evidence of the general character of the widow he employed, even had it shown that it was bad, was not admissible to prove adultery. Nor was the evidence introduced for the purpose of showing that appellant's character for virtue was not good. This is a specific charge, and must be proved, like any other fact, by either positive or circumstantial evidence, and not by hearsay or mere rumor and gossip of the neighborhood. If guilty, the charge must be established by evidence of acts and circumstances that convinces the understanding.

Nor do we see that the fact that he may have, during the period his wife was absent, visited, on one or two occasions, female friends, or at one or more times been seen riding in a carriage with females, prove the charge. No attendant circumstances indicate that he acted improperly on those occasions, and we can not infer adultery from them. Nor do we see, from the entire evidence in the record, that the charge is established. It should be proved, and by evidence that is legitimate and convinces the mind by a preponderance of its weight, and not by mere suspicion or conjecture from vague, indefinite circumstances, pointing to no specific time, place, or

act. Such loose evidence can not, even if it were admissible, prove the charge; and there is no legitimate evidence upon which to base the conclusion that he committed adultery.

We now come to consider the instructions. Appellant asked and the court refused to give this instruction:

" The jury are also further instructed, that the law does not allow the jury to presume the adultery of the complainant where the facts or circumstances relied upon to establish the same may be as well attributed to an innocent intent or motive as a guilty one."

No objection is perceived to this instruction. It announces a correct rule of law, and is free from even verbal criticism, unless the word "if" should be substituted for the word " where." But it is the undoubted rule of law, that where immorality or wrong is imputed, it must be established by at least a preponderance of proof. And when the evidence may as well establish innocence as guilt, the jury should always adopt the former rather than the latter hypothesis; and the same is manifestly true where a violation of the marital rights is charged by the commission of an act that degrades the parties and inflicts great wrong upon society. When such a charge is made it involves the character of both parties to the offense, and the character of the woman to whom it is of priceless value; she should not be found guilty on evidence which may as well import innocence as guilt. All persons are presumed to be innocent until proved guilty, and to hold that act, which may as reasonably be attributed to an innocent intent, as a guilty act, would impair if it did not abrogate the rule; it would authorize the finding the existence of a fact on evidence that was in equipoise. It was error to refuse this instruction.

The sixth of defendant's instructions should have been modified. In the previous instructions the court very properly told the jury what acts on the part of the husband would constitute reasonable cause for appellee's leaving her husband; but in the latter clause of the sixth instruction, the acts and cir-

29—62D ILL.

cumstances which would constitute a justification, are left to the determination of the jury. Now we can not see which the jury followed; and we can see that if they followed the latter, it must have operated to appellant's prejudice, and accounts for the verdict which they returned. In this there was error; for the errors indicated the decree of the court below is reversed and the cause remanded for further proceedings, in conformity to this opinion.

*Decree reversed.*