GEORGE S. HENDERSON

*v.*

REBECCA HENDERSON.

1. DIVORCE—*cruelty required—sufficiency of proof.* The wife, on the trial of a suit by her for a divorce on the ground of extreme and repeated cruelty, testified that some ten years before, the defendant kicked her while in bed, because she put her cold feet to his, not hurting her much, but hurting her feelings, and that he punched her with his elbow because she wanted him to lay over in the bed, while he denied ever striking her or kicking her in anger. She did not claim he ever injured her, or threatened her with violence. It appeared there were occasional altercations, in which angry and abusive language was used by each toward the other, each claiming that it was provoked by the other: *Held,* that the evidence did not show that extreme and repeated cruelty required by the statute, as a ground of divorce.

2. SAME—*what meant by extreme and repeated cruelty.* The extreme and repeated cruelty required for a divorce must be physical harm, in contradistinction to mere harsh or even opprobrious language, or even mental suffering. The cruelty must be grave, and endanger life or limb, or at least subject the person to danger of great bodily harm.

3. SAME—*not proper to leave it to jury to find whether a party is entitled to a divorce.* On the trial of a suit for divorce, it is error to leave it to the jury to find, by a preponderance of the evidence, whether the complainant is entitled to a separation from the defendant.

4. INSTRUCTION—*must not leave jury to decide law.* The court should instruct the jury as to the law of the case, and never leave it, by instruction, to be found by them. It is error to leave the jury to find whether a party is entitled to a divorce.

APPEAL from the Circuit Court of Cumberland county; the Hon. J. C. ALLEN, Judge, presiding.

This was a bill for divorce, filed by the appellee against the appellant.

The third and sixth instructions, referred to in the opinion, are as follows:

"3. Personal cruelty may consist in other wrongs than mere physical violence, and may be by any means that tend to render the life of the person wretched and miserable."

"6. The court instructs the jury, that the only duty of the jury in this case is, to find, by a preponderance of proof, that the complainant, Mrs. Henderson, is entitled to a separation from George S. Henderson, the defendant."

Mr. HORACE S. CLARK, and Messrs. WILKIN & WILKIN, for the appellant.

Mr. H. B. DECIUS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a proceeding, in the Cumberland circuit court, by appellee, to obtain a divorce. The ground relied on is, extreme and repeated cruelty. The case was tried by the court and a jury, resulting in a verdict in favor of complainant, and a decree granting the divorce and alimony was rendered, from which defendant appeals and asks a reversal.

The evidence is very slight, if there is any, showing physical violence. Appellee testified that appellant kicked her some ten years before the trial. She says they were in bed, and he kicked her because, as he said, she put her cold feet to his, but he did not hurt her much, but hurt her feelings; that he punched her with his elbow, because she wanted him to lay over in the bed. He says, at one time when in bed, and he was dozing, she punched him and he punched her back, but denies ever striking or kicking her in anger, nor does she claim that he injured her or ever threatened her with violence. But it is apparent, from the evidence, that there were occasional altercations between them, when angry and abusive language was used by each towards the other. She testified he provoked her to it, and he testified that she provoked it from him. It is apparent that their relations were not harmonious for several years before she left him, and before she brought this suit. She does not show that her life was ever in peril, or that she was ever in danger of any great bodily harm, or has suffered any personal injury at his hands. Both testify to negligent treatment from each other for several years

before the separation, and where the fault lies is not apparent from the evidence.

The General Assembly has, in plain and unmistakable language, defined the offense to be "extreme and repeated cruelty." This court, as well as all other courts acting under similar statutes, has held, that it must be bodily harm, in contradistinction to mere harsh or even opprobrious language or mere mental suffering—that the cruelty must be grave, and endanger life or limb, or at any rate subject the person to danger of great bodily harm. And this is the rule of the English ecclesiastical court. *Evans* v. *Evans*, 1 Hagg. C. R. 35 (4 E. E. R. 310.) This is referred to as the leading case in that court. But the question as to what constitutes the cruelty contemplated by our statute, has been before this court on several occasions, and has undergone mature consideration. See *Vignos* v. *Vignos*, 15 Ill. 186; *Turbitt* v. *Turbitt*, 21 id. 438; *De La Hay* v. *De La Hay*, id. 252; *Harman* v. *Harman*, 16 id. 90; *Birkby* v. *Birkby*, 15 id. 120; *Von Glahn* v. *Von Glahn*, 46 id. 135. Under these cases, the evidence was insufficient to sustain the finding.

Divorces can only be granted for the causes specified in the statute. Anything short of its requirements will not suffice. The General Assembly seems to have restricted rather than enlarged the grounds of divorce, as, in the revision of 1874, the eighth section of the act of 1845 (Rev. Stat.), giving the courts power to grant divorces for other than the enumerated causes, is omitted. This seems to show that it was regarded as unwise to permit divorces to be granted for other than the enumerated causes, and as tending to render them too easily obtained. We should, therefore, run counter to the manifest policy of the General Assembly if we were to relax our former decisions. The General Assembly has not regarded them as too rigid, or it would have modified them by enactment.

The instructions for complainant were faulty, and most probably led the jury to their finding. The first instruction is condemned by the cases cited. It lays down a rule con-

demned by them, and announces what those cases hold is not the law. It was error to give it. The third is in the teeth of those decisions, and is condemned by them, and the same is true of the second. The sixth leaves it to the jury to find, by a preponderance of the evidence, whether complainant was entitled to a separation from her husband. This instruction left to the jury—not even under the statute, or the rules, erroneous as they were, announced in other instructions, but on their own notions of right or wrong—to find whether a divorce should be granted. This was the obvious effect, if not the precise language, of this instruction, and it is seldom one is found so inherently vicious. It is so familiar a rule, we can not reasonably suppose it to be necessary to repeat it, that the court must instruct the jury as to the law of the case, and never leave it, by instruction, to be found by them. This leaves it to them to find as they best may, not even referring them to the sources where they may learn it, thus almost insuring an erroneous finding.

These instructions were clearly wrong, and the decree of the court below must be reversed and the cause remanded.

*Decree reversed.*

Mr. JUSTICE SCOTT dissenting.