Fritts v. Fritts.

## John Fritts

### v.

## Elizabeth Fritts.

*Divorce—Suit by the Husband—Extreme and Repeated Cruelty—Desertion—Refusal to Permit Sexual Intercourse—Justifiable Refusal—Evidence—Instructions.*

1.  In a suit by the husband it is *held,* that the evidence did not warrant a decree of divorce on the ground of extreme and repeated cruelty.

2.  Refusal of the wife, without justifiable cause, to permit sexual intercourse for a period exceeding two years, is equivalent to desertion, and entitles the husband to a divorce.

3. In the case at bar it is held that the action of the husband justified the wife in refusing him sexual intercourse.

4. In the case at bar the refusal of instructions which ought to have been given, is held to be no ground for reversal.

[Opinion filed June 13, 1890.]

APPEAL from the Circuit Court of Pope County; the Hon. O. A. HARKER, Judge, presiding.

Messrs. JAMES C. COURTNEY and SHERIDAN & MOORE, for appellant.

Messrs. W. S. MORRIS & SON, for appellee.

PHILLIPS, J. Appellant filed his bill in the Pope Circuit Court, charging appellee, defendant therein, with desertion for a space of time exceeding two years prior to the time of filing the bill, and also charging her with extreme and repeated cruelty. Appellee filed her answer denying the allegations of the bill. A trial was had before a jury resulting in a verdict finding the defendant not guilty, and a decree was entered dismissing the bill, and the record is brought to this court by appeal. From a careful examination of the evidence in this record, it is apparent there was petulance of manners, rudeness of language and frequent sallies of passion and threats made on the part of appellee toward appellant, but we are unable to find from the entire evidence that appellee ever attempted to strike appellant more than once, nor do we find any attempt on her part to carry out threats of personal injury. The appellant testifies that appellee made an assault on him with an axe, but does not show that she attempted to strike, or he in any way avoided or prevented the blow. The fact of the assault having been made is denied by appellee, and she is sustained by two witnesses, so that the weight of proof fails to show that allegation is true. Appellant further testifies that appellee made an assault on him with a plank, and attempted to strike him, and he caught the same in his hand to prevent the blow. The evidence shows appellant

Fritts v. Fritts.

was whipping one of his sons severely, and the wife interfered and insisted the punishment should go no further; in the quarrel growing out of this occurrence the assault with the plank is claimed to have been made. This assault is admitted by the wife to the extent that she advanced toward the husband in a threatening manner, but the fact of striking at him is denied, and it is charged by her that when she advanced on him he desisted from whipping the boy, caught up a pole and drew the same in a threatening manner on her. Be this as it may, there is no evidence to show any other blow inflicted or attempted, or any other act of personal violence. It is further testified by appellant that she attempted to poison him, to destroy his property, to break him up; that she had become jealous of him and falsely accused him of improper intercourse with other women.

In Birkby v. Birkby et al., 15 Ill. 120, the Supreme Court said, " The allegations of the cross-bill are not sufficient to authorize a decree of divorce. The substance of those allegations is, that she had become jealous of him, and accused him of improper intercourse with other women, which involved him in difficulties in the neighborhood. That she refused to attend to her household duties, and absented herself from his house, sometimes for days and weeks together; that she threatened to take his life, to burn his buildings and destroy his property." In Vignos v. Vignos, 15 Ill. 186, it was said: " That the husband was unkind in his treatment and tyrannical in his disposition, is most likely true, but there is no personal violence shown, unless it may probably be inferred upon one occasion, when in bed together, she was overheard to request him not to kick her; whether he had kicked her or did kick her the witness did not know, nor did the party say. It is not enough that the parties do not live happily together; threats of personal violence may have been used, and abusive language and opprobrious epithets, originating in a groundless jealousy ; but this we can not hold to be a sufficient ground for divorce under our statute." In De La Hay v. De La Hay, 21 Ill. 251, it was held: " When the husband is the complainant, it is not sufficient to show slight acts of.

violence on her part toward him, as long as there is no reason to suppose he will not be able to protect himself by a proper exercise of his marital powers,   *   *   *   and it must therefore be a clear case which will induce the court to grant a divorce on the application of the husband for the cruelty of the wife.   *   *   *   So in this case the evidence shows a desertion for weeks and even months of the time, but not for the space of two years. It likewise shows that she on one occasion attempted to commit an assault upon him with a hammer, but did no injury; but there was no evidence showing a repetition of the act."

In Turbitt v. Turbitt, 21 Ill. 438, it was said: "It has been repeatedly held by this court that austerity of temper, sallies of passion or the use of abusive language do not constitute extreme and repeated cruelty under our statute." In this case the proof fails to show more than one act of personal violence, and that is shown under circumstances of provocation, as the whipping of the boy was of a most severe character, the boy's shirt being stained with blood from the blows inflicted. Appellant found in the possession of appellee strychnine, from which, coupled with previous threats, he testifies to fears of being poisoned; but the purpose for which it was in her possession and for what it was used is shown by her testimony, and she kept it concealed to prevent its being handled by small children. We fail to see in this evidence anything that tends to show cause for the fears of the husband. The evidence was clearly insufficient to authorize a decree for divorce on the ground of extreme and repeated cruelty. Von Glahn v. Von Glahn, 46 Ill. 134; Henderson v. Henderson, 88 Ill. 248; Embree v. Embree, 53 Ill. 394. The evidence shows from 1886 to the time of filing the bill the appellant, because—as he alleges—of the quarrelsome disposition and fault-finding of his wife, ceased to occupy the same room with her, but used, as his sleeping apartment, a room in an old flat-boat, that in time of high water had been stranded near his door; refused to take his meals at the table with his wife and children, but had his meals carried to him to the porch by his daughter residing in the house with her mother.

Fritts v. Fritts.

It further appears that during his temporary absence the wife and daughter sought to render more comfortable his room in the boat, by placing therein bed and bedding of a better character and cleanliness than that he was using, but on his return he ordered the daughter to take the same from the room.

The evidence shows that there was scarcely any communication or conversation between the husband and wife for a number of years; his testimony on that point is as follows: " Q. How long has it been since you spoke to your wife as to business, and such things as that? A. It has been ever since a couple of years after our last child was born. Q. Where did you sleep after that? A. I would sleep on the lounge by myself in the room. Q. How long did you sleep in the room? A. Until 1885. Q. Where did you sleep after that? A. Well, I would sleep with the children part of the time, and other times I would go and sleep in the front room. Q. After you quit sleeping in the room where did you sleep? A. I slept in the boat. Q. How long did you sleep in the boat? A. I slept in the boat until last spring, a year ago. Q. State the occasion of your sleeping in the boat. A. I could not sleep in the house without there always being a fuss, and I just left the whole house to them. Q. State where it was that you ate, generally. A. I generally ate at the table until the abuse got so that I got up from the table and went out on the porch." He further states, in response to the question, "State to the jury, Mr. Fritts, how long it has been since you have had sexual intercourse with Mrs. Fritts. A. Since 1883 or 1884, may be later than that. She has refused to have sexual intercourse with me since the birth of our last child." The charge for desertion and absence for two years prior to the time of filing the bill is based on the refusal of the wife to permit the husband to have sexual intercourse with her. The suit for restitution of conjugal rights, which could be brought whenever the husband or wife was guilty of substraction, a remedy afforded at common law, is not known or recognized in this State. But ecclesiastical courts, while enforcing conjugal cohabitation, did not pretend to enforce marital intercourse. Orme v. Orme, 2 Add. Ec. 382.

Whether the refusal by the husband or the wife to have sexual intercourse with the other during a period of time exceeding two years without justifiable cause, is desertion within the meaning of the statute, has not been determined by the Supreme Court of this State. The question was directly before the Supreme Court of Massachusetts in Southwick v. Southwick, 97 Mass. 327, and it was held that such refusal, although unjustified by considerations of health or physica disability, was not sufficient to support a libel by the husband for a divorce on the ground of desertion. In Fishli v. Fishli,[1] 3 Litt. 337, a case where the husband had deserted the wife' but before the expiration of two years wrote her a letter offering to genteelly and comfortably support her in his own house or in lodgings, as she should prefer, the Supreme Court of Kentucky held that the offer of a husband to support his wife genteelly and comfortably in his own house or in lodgings, as she should prefer, was not an offer to live with her in the relation of husband and wife, and, as she was, by the nature and terms of the marriage contract, entitled to stand in that relation to him, she was not bound to accept of an offer to stand in any other. Mr. Bishop, in his work on Marriage and Divorce, Sec. 779, says, with reference to this question: "Of principles relating to the question now before us, we have the following: First, to constitute desertion, there need not be an abnegation of all the duties of marriage, as just shown. Secondly, sexual intercourse is so important an element in any marriage, that without the capacity therefor it will be voidable. Thirdly, and consequently, the law holds such intercourse to be the central element of marriage, to which the rest is but ancillary. It is that, and that alone, which, out of marriage, is unlawful. A man may lawfully obligate himself to support a woman not his wife, or to support her children, or to retain her in his house as long as they both live, and to be kind to her. She may bind herself, in a corresponding way, to him. Indeed, there is but one thing which is special to marriage, and is lawful in no other relation. All else pertaining thereto a man and woman may mutually contract for, and do, without taking the first step toward marriage. If,

Fritts v. Fritts.

then, not from any justifiable cause, but from wilfulness, or a desire to injure, or from what, in Tennessee, is known as 'malice,' a married party takes a separate room in the house, and not as a mere temporary expedient, not, in the language of Sir Christopher Robinson, 'on consideration of health,' but, as a wilful, irrevocable act, abandons and abjures forever all matrimonial intercourse, the adjudged law, speaking through its principles, rather than by resolving of the exact question, makes it desertion." Impotency is, by our statutes, made a cause for divorce, and the husband or wife would not be permitted to say in bar of a suit for divorce for this cause, that he or she never intended to have sexual intercourse with the other. And if the law will permit the refusal of marital intercourse not based upon justifiable cause, the result is the same as if impotency existed. On legal principle, we hold the refusal of the wife, without justifiable cause, to permit the husband to have sexual intercourse with her during a period of time exceeding two years, is desertion within the meaning of the law. The instructions asked by complainant, that a persistent refusal, without cause, during a period of more than two years, to at any time permit marital intercourse, was desertion within the statute, should have been given, and it was error to refuse the same.

There are instructions given for defendant that are erroneous, but ought this case to be reversed for such error? From this evidence, according to the testimony of the appellant, it has been within two years of the birth of his last child, a period of more than seven years, since he spoke to his wife in reference to " business and such things as that." The evidence shows that since that time he has spoken to her in no way except to answer, in the affirmative or negative, questions put to him by her; he refused her his society; refused to associate with her at the table; absented himself from her bed during all that time; and the uncontradicted testimony of the wife shows that, on two or three occasions after he abandoned her bed, she asked him to return to it, and to this he made no answer. Had he given her a little decent treatment it may be that he would have had no cause of complaint. It is evident

38  APPELLATE COURTS OF ILLINOIS.

VOL. 36.]  Cons. Coal Co. v. Block & Hartmann Smelting Co.

her jealousy was aroused, and from the entire testimony we find there was cause for jealousy; the woman of whom she was jealous had been an inmate of her house; was sent away by the demand of the wife; was taken away by the husband, and when he took her away he furnished her $20; he subsequently loaned her $35, and yet he says the cause of the trouble originally between himself and wife was that the woman was brought to the house by the wife against his objection, because of his unwillingness to aid in her support. The testimony of the wife in reference to the compromising situation in which she found him with the woman, and the entire testimony taken together, induces the conviction that there was cause for her jealousy. The entire testimony shows the treatment of the wife by the husband to be such that we can not hold that there was no justifiable cause for her refusal. If this case was free from any error in instructions, we do not believe that a verdict finding the defendant guilty could have been permitted to stand. The verdict is in accordance with the evidence, and for the error in refusing and giving instructions ought not to be reversed. The decree dismissing the bill was proper, and the decree is affirmed.

<em>Judgment affirmed.</em>