JOHN FRITZ

*v.*

ELIZABETH FRITZ.

*Filed at Mt. Vernon November 4, 1891.*

1. DIVORCE— *desertion* — *what constitutes.* Under our statute, the desertion or absence which will justify a divorce must be "without any reasonable cause," and it has been held that "reasonable cause" which justifies a wife's desertion must be such as will entitle her to a divorce, and that the mere refusal of marital intercourse without sufficient reason will not justify desertion.

2. The refusal of a wife, without good cause, to have sexual intercourse with her husband for a period of two years or more, is not such conduct as amounts to willful desertion, within the meaning of the statute relating to divorce. The willful desertion which is made a ground of divorce means the abnegation of all the duties of the marital relation, and not of one, alone.

3. The refusal of sexual intercourse alone can not be construed to mean willful desertion without reasonable cause, under our statute relating to divorce.

4. Same—*extreme and repeated cruelty—what constitutes.* On a bill by a husband for a divorce, on the ground of extreme and repeated cruelty, it is not sufficient to show slight acts of violence on the wife's part toward him, so long as there is no reason to suppose he will not be able to protect himself by a proper exercise of his marital powers.

5. One act of force and violence, preceded by insult and abuse, does not constitute that extreme and repeated cruelty which will justify a divorce. No one act of personal violence, although coupled with abusive and derogatory language, constitutes a cause of divorce.

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Pope county; the Hon. Oliver A. Harker, Judge, presiding.

Mr. James C. Courtney, and Messrs. Sheridan & Moore, for the appellant:

The wife's refusal of sexual intercourse with her husband was desertion, which, if continued for two years, is a ground of divorce. 1 Bishop on Marriage and Divorce, sec. 779; *Hermance* v. *James,* 47 Barb. 120.

This case squarely presents the question whether one malicious blow, struck with a deadly weapon, preceded and followed for many years by frequent threats to poison, and all other imaginable cruelty, is a sufficient cause for divorce.

As to what is extreme and repeated cruelty, see *Harman* v. *Harman,* 16 Ill. 85; *Ward* v. *Ward,* 103 id. 483; *Evans* v. *Evans,* 2 Hagg. Com. 311; Bishop on Marriage and Divorce, 730-745, 718, 745a, 1608; *Turbitt* v. *Turbitt,* 21 Ill. 438; *Von Glahn* v. *Von Glahn,* 46 id. 138; *Embree* v. *Embree,* 53 id. 394; *Coursey* v. *Coursey,* 60 id. 188; *Farnham* v. *Farnham,* 73 id. 499; *Henderson* v. *Henderson,* 88 id. 248.

Mr. W. S. Morris, for the appellee:

That marriage is not a means solely to sexual commerce, see 1 Blackstone's Com. 362; 1 Bouvier's Institute, 101.

Keeping a separate bed-chamber in the same house, and refusing to have sexual intercourse for the statutory period, does not constitute desertion. *Southwick* v. *Southwick*, 97 Mass. 327; *Eshbach* v. *Eshbach*, 22 Pa. St. 353; Prichard's Dig. "Desertion," note 4; 2 Kent's Com. 153.

As to extreme and repeated cruelty, see *Ward* v. *Ward*, 103 Ill. 483; *Poor* v. *Poor*, 8 N. H. 307; *Kennedy* v. *Kennedy*, 73 id. 269; *Harman* v. *Harman*, 16 Ill. 90; *Birkby* v. *Birkby*, 15 id. 121; *Vignos* v. *Vignos*, 15 id. 187; *Embree* v. *Embree*, 53 id. 394.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the Court:

This is a bill filed in the Circuit Court of Pope County on April 17, 1889, by the appellant against the appellee, his wife, praying for a divorce from her upon the alleged grounds, that she "has wilfully absented herself from your orator without any reasonable cause for the space of two years, and has been guilty of extreme and repeated cruelty." The defendant answered denying the allegations of the bill, and replication was filed to the answer. The verdict of the jury and the judgment of the trial court were in favor of the defendant. The present appeal is from the judgment of the Appellate Court · affirming the judgment of the Circuit Court.

The first question in the case arises out of the refusal of the trial court to give the 3d, 4th, 5th, 6th and 7th instructions asked by the complainant below. These instructions, in substance, announce the doctrine, that, where a wife refuses, without good cause, to have sexual intercourse with her husband for a period of two years or more, such conduct amounts to willful desertion. Mr. Bishop, in his very able work upon Marriage and Divorce, gives this doctrine his support. (1 Bish. on Mar. & Div.—6 ed.—secs. 778, 778a, 779). It is not, however, sustained by well considered authorities. The cases favoring it, to which we have been referred, are *Harmance* v.

*James*, 47 Barb. 120 ; *Fishli* v. *Fishli*, 2 Littell, 337 ; *Sisemore* v. *Sisemore*, 17 Ore. 542. In no one of these cases did the question fairly arise, whether the neglect of this one of the marital duties, without the neglect of any other of such duties, by itself constituted willful desertion. The *Harmance* case was an action for damages for depriving the plaintiff of the affections, comfort, fellowship, society, and aid and assistance of his wife in his domestic affairs, and arose upon demurrer to the complaint filed in the action. In the *Fishli* case, the husband had abandoned his wife for the space of two years, and sought to meet the charge of such abandonment by setting up, that, a few weeks before the expiration of the two years, he had made an offer to support his wife in his own house, or in lodgings, as she might prefer. In the *Sisemore* case, it appeared that the offense of the wife was not so much the one now under consideration, as her refusal to remove to a new home selected by her husband in another county.

The doctrine contended for rests mainly upon the idea, that sexual intercourse is "the central element of marriage to which the rest is but ancillary," and, while it may be urged with no little force, that the refusal of such intercourse by one of the parties to the marriage contract is such a violation of marital duty that it ought to be regarded as a good ground of divorce, yet the question before us is simply as to the meaning of our statute. The Divorce Act provides that a divorce may be granted where either party "has willfully deserted or absented himself or herself from the husband or wife, without any reasonable cause, for the space of two years." We think that the willful desertion here referred to was intended to mean the abnegation of all the duties of the marital relation, and not of one alone.

In *Carter* v. *Carter*, 62 Ill. 439, desertion is treated as synonomous with absence, and absence involves the neglect of other duties than the one in question. The Supreme Court of Maine, in speaking upon this subject, says : "Sexual inter-

course is only one marital right or duty. There are many other important rights and duties. The obligations the parties assume to each other, and to society, are not dependent on this single one. Many of these obligations, fidelity, sobriety, kind treatment, etc., have legal sanctions, and can be enforced, or their breach remedied by legal process." (*Stewart* v. *Stewart*, 78 Maine, 548.)

The view of this subject, which commends itself to our approval, is that announced by the Supreme Court of Massachusetts in *Southwick* v. *Southwick*, 97 Mass. 327, where Chief Justice Bigelow says: "The word desertion in the statute does not signify merely a refusal of matrimonial intercourse, which would be a breach or violation of a single conjugal or marital duty or obligation only, but it imports a cessation of cohabitation, a refusal to live together, which involves an abnegation of all the duties and obligations resulting from the marriage contract." The later case of *Magrath* v. *Magrath*, 103 Mass. 577, does not overrule the *Southwick* case, in so far as the latter holds that the refusal of matrimonial intercourse is not of itself sufficient to justify a divorce on the ground of desertion. The divorce for desertion was allowed in the *Magrath* case, because, in addition to the husband's intentional and permanent abandonment of all matrimonial intercourse with his wife, he withdrew from her his companionship and the protection of his home. It is there said, after referring to the Southwick case: "The case at bar goes much further. Here there has been for the time required by the statute, an abnegation on the part of the husband of all the chief duties and obligations, which result from the marriage contract and distinguish it from others. There is no more important right of the wife than that, which secures to her in the marriage relation the companionship of her husband and the protection of his home."

The same view has been adopted in Maine. In *Stewart* v. *Stewart, supra*, it is said: "This case therefore presents the question whether the legislature, by that statute, intended to

authorize a divorce where one party, without good cause, denies the other sexual intercourse for three consecutive years. * * * It has been expressly held that such refusal is not the desertion contemplated by the statutes authorizing divorces for desertion. *Southwick* v. *Southwick,* 97 Mass. 327; *Steele* v. *Steele,* 1 McArthur, (D. C.) 505. * * * We do not think our legislature intended to call the denial of this one obligation an "utter desertion," while the party might be faithfully and perhaps meritoriously fulfilling all the other marital obligations."

Some importance is attached in the *Stewart* case to the fact, that the Maine statute uses the word "utter" before "desertion." But we do not think that the absence of that word from our statute affects the construction of its language with reference to the point now under consideration. It is a mistake to say, as it is stated in *Stewart* v. *Stewart, supra,* and in Bishop on Mar. Div. and Separation, sec. 1680, that the *Southwick* case is based upon a statute providing for "utter" desertion. The *Southwick* case was decided in 1867, before the Massachusetts statute of 1882, referred to in *Stewart* v. *Stewart,* was passed, and the statute in force in Massachusetts in 1867 did not use the word "utter," as is shown by the remarks of the Court in *Southwick* v. *Southwick, supra.* In our opinion, refusal of sexual intercourse alone cannot be construed to mean willful desertion without reasonable cause under the Illinois statute, any more than it can be construed to mean utter desertion under the Maine Statute.

In harmony with the Massachusetts and Maine cases is the case of *Steele* v. *Steele, supra,* where it was the opinion of the court, that a husband could not maintain a suit for divorce solely on the ground that his wife had denied matrimonial intercourse to him.

In Kent's Commentaries—12 ed.—vol. 2, Lecture 27, marg. page 128 note 1, it is said: "Keeping a separate bed chamber in the same house, and refusing to have sexual intercourse

for the statutory time, is not desertion. *Southwick* v. *South-wick,* 97 Mass. 327 ; *Eshbach* v. *Eshbach,* 23 Penn. St. 343 ; see Prithard's Dig. *Desertion,* n. 4."

At common law, whenever either the husband or wife was guilty of the injury of subtraction, or lived separate from the other without any sufficient reason, a suit could be brought in the ecclesiastical courts for a restitution of conjugal rights. But those courts made a distinction between "marital inter-course," or sexual intercourse, and "marital cohabitation," or living together. They enforced the latter, but not the former. They merely required the offending party to return and live with the libellant. In such proceedings, the cessation of co-habitation warranted a decree, but the suit for restitution of conjugal rights could not be maintained on the ground of a refusal of marital intercourse. Desertion in such suits was held to signify a refusal to live together, and, in this country, the action for divorce on the ground of desertion is a substi-tute for the English proceeding for the restitution of conjugal rights. (Black. Com. Book 3, marg. pge 94 ; 1 Bish. on Mar. & Div.—6 ed.—sec. 778 ; *Orme* v. *Orme,* 2 Add. Ec. 382 ; *Forster* v. *Forster,* 2 Hag. Con. 144, 154 ; *Stewart* v. *Stewart, supra ; Southwick* v. *Southwick, supra.*)

It will be noted, that, under our statute, the desertion or absence which will justify a divorce must be "without any reasonable cause." It has been held that the "reasonable cause, which justifies a wife's desertion and abandonment of her husband, must be such as would entitle her to a divorce." (*Eshbach* v. *Eshbach, supra.*) It has also been held, that the refusal of marital intercourse without sufficient reason will not justify desertion. (*Reid* v. *Reid,* 21 New Jers. Eq. Rep. 331 ; *Stewart* v. *Stewart, supra;* Browne's Com. on Law of Div. & Ali. page 153.) It follows, that the denial of marital intercourse will not entitle a husband or wife to a divorce, and, therefore, cannot be regarded as such desertion as is contemplated by the statute. In this State, courts derive their

power to decree divorces solely from the statute, and for such causes only as have been designated by the legislature.

For the reasons thus stated, we are of the opinion, that the court below committed no error in refusing to give the instructions numbered 3, 4, 5, 6 and 7, which were asked by the complainant.

The appellant assigns as error that the trial court refused to give the second instruction asked by the complainant, and gave the eighteenth instruction asked by the defendant. The second and last clause of said second instruction is as follows: "Whenever force and violence, preceded by deliberate insult and abuse, have been *once or twice*, wantonly and without provocation used by the wife to her husband, then the wife would be guilty in law of extreme and repeated cruelty." This clause announces the proposition, that *one* act of force and violence preceded by insult and abuse constitutes extreme and *repeated* cruelty. The eighteenth instruction given for the defendant announced the contrary of such proposition. We do not think that the error thus complained of is well assigned.

In the late work of Bishop on Marriage, Divorce and Separation, vol. 1, sec. 1608, it is said: "The words in Illinois are 'extreme *and repeated* cruelty;' and it is plain that a single act, though it may be 'extreme' in point of cruelty, is not therefore 'repeated.' The consequence of which is, that there can be no one act of violence which alone will bring a case within this statute."

In *Vignos* v. *Vignos*, 15 Ill. 186, one act of violence, together with unkind treatment and the use of harsh language, was held to come far short of what the statute means by "extreme and repeated cruelty."

In *Harman* v. *Harman*, 16 Ill. 85, we said: "This court in *Birkby* v. *Birkby*, 15 Ill. 120, and in *Vignos* v. *Vignos,* 15 id. 186, have held that one instance of personal violence did not constitute a statutory cause, although coupled with abusive and derogatory language."

In *De La Hay* v. *De La Hay*, 21 Ill. 252, we said: "And when the legislature has said that cruelty must be extreme and repeated, to constitute a ground, the courts cannot say that a single act will suffice." (See also *Turbitt* v. *Turbitt*, 21 Ill. 438.)

In *Embree* v. *Embree*, 53 Ill. 394, this court, speaking through Mr. Justice Walker, said: "It is a positive requirement of the statute, that there shall be extreme and repeated cruelty to authorize the courts to dissolve the marriage tie. One act has not, in this State, been held to answer the requirements of the statute. And the uniform construction given to the act by this court, * * * is, that the cruelty must consist in physical violence, and not in angry or abusive epithets, or even profane language."

In *Farnham* v. *Farnham*, 73 Ill. 497, although abusive language, used by a husband towards his wife in private or in the presence of strangers, which consisted of false charges against her virtue and fidelity to her marriage vows, was allowed to be considered by the jury as characterizing his acts of physical cruelty, yet two distinct acts of personal violence to the wife were clearly proven.

In *Henderson* v. *Henderson*, 88 Ill. 248, we again said: "This court * * * has held that it (extreme and repeated cruelty) must be bodily harm, in contradiction to mere harsh or even opprobrious language or mere mental suffering—that the cruelty must be grave and endanger life or limb, or at any rate subject the person to danger of great bodily harm." (See also *Coursey* v. *Coursey*, 60 Ill. 186).

In *Ward* v. *Ward*, 103 Ill. 477, although it was said that extreme and protracted suffering might be produced primarily by operating on the mind alone, and that threats of physical violence and false charges of adultery maliciously made were competent evidence to prove cruelty, yet it is at the same time the plain doctrine of that case, that the threats must be such as raise a reasonable apprehension of bodily hurt, and must be accompanied or followed by acts of actual malicious phys-

ical violence, and must serve to magnify the atrocity of such acts. It is also there said, that any willful misconduct of the husband which endangers the life or health of the wife, which exposes her to bodily hazard and intolerable hardship, and renders cohabitation unsafe, is *extreme* cruelty, and that *"many acts"* are not necessary to constitute such *extreme* cruelty, yet it is nowhere intimated that there can be *repeated* cruelty without more than one act of violence. On the contrary, the *Farnham* case is quoted with approval in the *Ward* case, and the proof in the latter case showed, that the husband had committed four or five distinct assaults and batteries upon his wife, apparently without provocation, and, in addition thereto, had insulted and abused her constantly for three years.

Even in *Sharp* v. *Sharp*, 116 Ill. 509, where the circumstances were peculiar and of an usual character, it was shown that the husband had been guilty of at least two acts of physical violence, although they were separated from each other by a considerable period of time.

In the case at bar, the husband is charging the wife with extreme and repeated cruelty, and, in such case, "it is not sufficient to show slight acts of violence on her part towards him, so long as there is no reason to suppose he will not be able to protect himself by a proper exercise of his marital powers." (*De La Hay* v. *De La Hay, supra*).

We do not think, that the court erred in refusing to instruct the jury that one act of force and violence, preceded by deliberate insult and abuse, even though committed wantonly and without provocation, was sufficient to constitute extreme and repeated cruelty.

Several other objections are made by the appellant based upon the giving or refusal of instructions. After a careful examination of all the instructions in connection with the evidence, we find no sufficient reason for disturbing the result reached by the lower courts.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*