## Mary R. Frankenberg, Appellant, v. Carl V. Frankenberg, Appellee.

1. DIVORCE, § 9*—*when decree for desertion proper.* Where a husband deserts his wife for more than two years because she refuses to pay his debts she is entitled to a decree for divorce on the grounds of desertion.

2. DIVORCE, § 39*—*when evidence as to prior marriage and divorce incompetent.* In a suit for divorce the admission of evidence that plaintiff had been married and had been divorced from her former husband and that there were no children of that marriage and the husband was dead is error.

3. DIVORCE, § 53*—*when refusal to permit plaintiff to dismiss bill not error.* After a verdict has been rendered in a suit for divorce and a motion to set aside the verdict and for a new trial has been overruled, it is not error to refuse to permit plaintiff to dismiss her bill.

Appeal from the Circuit Court of Morgan county; the Hon. OWEN P. THOMPSON, Judge, presiding. Heard in this court at the April term, 1914. Reversed and remanded with directions. Opinion filed October 16, 1914.

BELLATTI & BELLATTI, for appellant.

M. T. LAYMAN, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Appellant filed her bill for divorce from appellee, in which she alleged that they were married February 15, 1894, and that two children were born of said marriage, both of whom are now over sixteen years of age, and that on May 16, 1911, appellee wilfully and without any reasonable cause absented himself from her for more than two years. The answer of appellee admits the marriage and the birth of the children, but denies that he deserted the complainant as charged in her bill. The issue was heard before a jury which

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

rendered a verdict in favor of appellee. A motion to set aside the verdict and for a new trial was made by appellant and overruled. Appellant then made a motion for leave to dismiss her bill, which was overruled. Thereupon the chancellor, instead of dismissing the bill for want of equity, entered a judgment against appellant in bar of the action.

Three assignments of error are urged in this court: First, that the chancellor should have granted a new trial on the ground that the verdict is contrary to the evidence; second, that the court erred in permitting certain evidence to be introduced on behalf of appellee; and third, that the court erred in denying the right of appellant to dismiss her bill after the motion for a new trial was overruled.

Appellee is a tailor in the city of Jacksonville and had no income except what he derived from his business. He had been married to appellant about eighteen years. They lived in a house owned by appellant's mother. During the early part of their married life appellee was engaged in selling skirts. These skirts were made by appellant on machines in the house. Subsequently appellee opened a tailor shop and appellant helped him more or less in that business. The evidence clearly shows without contradiction that appellant had always been a true and faithful wife to appellee and had helped him more or less in his work from the time they were married. It appears from the evidence that appellant received some property on the death of her father and that appellee was persistent in asking appellant for money, as he claimed, to pay his debts. Appellee's own testimony shows no legal ground for his desertion. In substance it is as follows: "It was probably six or seven weeks previous to leaving that I did not furnish the family with everything. I was in debt and wanted to pay my indebtedness before I went further in debt. When some bills became due, especially gas bills, in order to

get the discount I told her that I was unable to pay my bills. She made no reply. I knew that she had money. I went out and borrowed to pay for these things, only I could not pay very long as hard up as I was. As to what was said and done about my not furnishing the family with anything, when I asked her if she did not expect to help me out in any way she said she would do nothing. Well, I said that I would do nothing either. We will just quit where we are. This was said the day before I left the house. I never asked her for half of what she had or anything like that. I never asked her to deed me half of the property her father had left her. I supported my family to the best of my ability. It was about 8:30 the morning that I left the house. I told my wife there was no use trying to live like we were, and that the best thing I could do was to go and let her enjoy her money. My little daughter then came up and I told her it was useless for me to stay there under the circumstances. She cried and asked, 'What will I do?' I said, 'Do the best you can—get along the best you can—if you cannot get along here, come to me. I will always take care of you.' That made her sob and cry more. Then my wife got vexed at this and she said to me, 'You dirty dog, you go on and get your things and get out of here.' I said, 'I will go when I get ready,' and my little girl still hung to me and cried. My wife said, 'You brute, you go and let her alone. Don't work on the sympathy of your child. Take your things and get out of here.' I said, 'I will go in a few minutes and bother you no more.' She said, 'Bring your trunk out, as I want to lock the door and go down town.' I took my trunk and moved it outside. The reason I left was that they did everything to provoke me and wanted me to leave. My wife would stay away with the children for more than a week at a time and never write to me. The morning that I left I offered to kiss my wife, but she would not let me, so I told her it was useless to try to live together—we could be friends

just the same—I had no ill feeling towards her. If
she felt that greed should hold her to it, all right. I
would get along by myself. By greed I mean her re-
fusal to give me money." The conversation with the
wife as above testified to by appellee is denied by her
and the daughter. Admitting all the facts to be true,
as testified to by appellee, they fall far short of show-
ing that the desertion was for a reasonable cause. It
has been held that the reasonable cause which justifies
a husband's desertion and abandonment of his wife
must be such as would entitle him to a divorce. *Fritz
v. Fritz,* 138 Ill. 436; *Walton v. Walton,* 114 Ill. App.
116. The fact that a wife will not pay the debts of her
husband has not yet been declared to be a ground for
divorce on his part. The evidence clearly shows that
appellee had deserted and abandoned his wife for more
than two years without reasonable cause and that she
was entitled to a decree for divorce. The chancellor
erred in not setting aside the verdict and granting a
new trial.

On the cross-examination of appellant the court per-
mitted counsel for appellee, over objection, to show
that she had been married once before and had been
divorced from her husband, that there were no children
born of said marriage and that her former husband
was now dead. This was clearly incompetent. It had
nothing to do with the issues in this case. The only
purpose such evidence could serve would be to pos-
sibly prejudice the jury against appellant. In the ar-
gument of counsel for appellee to the jury, over objec-
tion, be made these remarks: "Mrs. Frankenberg had
been divorced before. Well, there was a divorce.
Didn't I get that right? All right—which ever way
you want that—she is divorced before, whether she
got it or her husband got it—I don't care—but the
fact is she is not new in a court room on divorce—
she is not a stranger to it—she has been divorced be-
fore—either she or her husband—I don't know—I
don't care. They objected. I told her not to answer

until they objected. They objected and the court said it was competent evidence. That was right. I want you to consider that fact together with all the other facts and circumstances.'' The court erred in allowing this evidence to be given and in permitting counsel to make said argument to the jury thereon. It might be possible that in some cases under some circumstances evidence of a prior marriage and divorce would be competent, but in the present case there was nothing whatever that could make such evidence competent.

The court did not err in refusing to permit appellant to dismiss her bill after the verdict was rendered and the motion to set aside the verdict and for a new trial had been overruled. Under the statute either party has a right to have the issues in a bill for divorce determined by a jury, and the trial has all the incidents of a trial at common law and the verdict has the same force and effect as a verdict in an action at law. It is not merely advisory as in an ordinary chancery suit. *Garrett v. Garrett*, 252 Ill. 318; *Biggerstaff v. Biggerstaff*, 180 Ill. 407. The general rule of chancery practice, that in the absence of a cross-bill a complainant has a right to dismiss the bill at any time before the decree is entered, does not apply to such chancery cases, the issues wherein the statute has provided may be determined by a jury. *Gifford v. Gifford*, 154 Ill. App. 416. To grant a motion to dismiss a bill in such a case after a verdict has been rendered by a jury would be equivalent to permitting the complainant to suffer a nonsuit. The Practice Act provides that every person desirous of suffering a nonsuit shall be barred therefrom unless he do so before the jury retire from the bar. In a chancery case where the statute gives either party the right to have the issues determined by a jury, a motion to dismiss the bill without prejudice comes too late after the jury has retired to consider its verdict.

For the reasons indicated the judgment of the Circuit Court will be reversed and the cause remanded with directions to set aside the judgment and to set aside the verdict and grant a new trial.

*Reversed and remanded with directions.*