AT

## DES MOINES, DECEMBER TERM, A. D. 1885,

IN THE THIRTY-NINTH YEAR OF THE STATE.

---

PRESENT:

HON. JOSEPH M. BECK, CHIEF JUSTICE.
" AUSTIN ADAMS,
" WILLIAM H. SEEVERS,  ⎫
" JOSEPH R. REED,       ⎬ JUDGES.
" JAMES H. ROTHROCK.    ⎭

---

## NAMES v. NAMES.

1. **Adultery:** EVIDENCE OF: WHAT IS SUFFICIENT. Adultery is peculiarly a crime of darkness,—seldom capable of being proved by other than circumstantial evidence; and the evidence is held to be sufficient when the circumstances proved lead naturally and fairly to the conclusion of guilt, and are inconsistent with any rational theory of innocence. (*Inskeep v. Inskeep,* 6 Iowa, 204.) Accordingly, the evidence in this case (see opinion) *held* to establish the defendant's guilt in an action for divorce.

2. **Evidence**: LETTERS TO PROVE LOCATION OF WRITER. Letters shown to be in plaintiff's handwriting, and purporting to have been dated at A., are not, in the absence of evidence that they were received through the mails, competent evidence that plaintiff was at A. at the date of letters.

*Appeal from Webster Circuit Court.*

TUESDAY, DECEMBER 8.

THE parties are husband and wife. Plaintiff brought an action for divorce on the alleged grounds (1) of adultery by the wife, and (2) of cruel and inhuman treatment, endangering his life. Defendant answered denying the grounds of divorce alleged in the petition. She also filed a cross-petition in which she demanded a divorce from plaintiff on similiar grounds. The circuit court dismissed both petitions, and both parties appeal, plaintiff's appeal being first perfected.

*John F. Duncombe* and *A. E. Clarke*, for plaintiff.

*O'Connell & Dolliver*, for defendant.

REED, J.—The allegation in plaintiff's petition is that defendant committed adultery with one H. C. Watters, at Fort Dodge, on or about the fifth day of May, 1883. Plaintiff claims to have proven three distinct acts of adultery between the parties, one occurring on the night of May 5th, another on the afternoon of the 7th, and the third on the night of the same day. We deem it necessary, however, to inquire only with reference to the transaction on the night of the 7th. The parties were married in 1874. They had one child, a girl, who was between five and six years old at the time of the transactions in question. They had resided in Fort Dodge for about two years, and for the greater part of the time had lived with plaintiff's mother. Their married life had undoubtedly been unhappy. Defendant admitted that she had ceased to love or care for her husband. It is not mate-

rial here to inquire as to the cause of this state of feeling between them. As is usual in such cases, both parties were probably in fault. On the evening of the fifth of May defendant went with her child to the house of Mrs. Walrod, who is a sister of plaintiff, where she remained until near midnight on the 7th. Mrs. Walrod kept a boarding-house, and Watters, the alleged paramour of defendant, boarded with her. He had been in the employ of Mrs. Walrod's husband for a number of years, and had lived with the family. At the time in question he worked for another party, but continued to live with the Walrods. Defendant had known Watters for a number of years, and we are satisfied that an intimacy had grown up between them. They manifested a decided preference for each other's society, and it is shown that they were often together alone. On each of the nights that defendant was at Mrs. Walrod's, when she retired to her room Watters accompanied her for the purpose, ostensibly, of carrying her child. On the night of the 7th, some time after defendant and Watters went into the room, plaintiff and his brother and a son-in-law of Mrs. Walrod also entered it. When these parties entered the room Watters was apparently about to leave it. He had no clothing on his person except his shirt and pants. Defendant at the time wore a loose wrapper. Her hair was hanging loosely about her shoulders. She had no shoes on her feet. Her corsets lay upon the bed, and other articles of clothing which she had removed from her person after she and Watters entered the room lay about it. The bed bore evidence of having been occupied, and a witness who was in an adjoining room testified that she heard the parties on the bed before plaintiff entered the room.

There is some conflict in the evidence as to the length of time they had been in the room before plaintiff entered it. He and his brother testified that they saw defendant and Watters enter the room, and that they did not disturb them for three-quarters of an hour after they entered. Defendant admitted they had been there for fifteen minutes

or more before her husband and his party came in. The other inmates of the house had retired before defendant and Watters went to the room, and they had been alone for some time in the parlor. Defendant, in her testimony, denies positively that she had intercourse with Watters on that night, or at any other time. She also attempted to explain some of the most suspicious circumstances of the situation. It seems to us, however, that the only conclusion which can reasonably be reached from the circumstances is that she is guilty. She had ceased to have any regard for her husband. She preferred the society of Watters. For three days she had absented herself from her husband, and had stopped at another house in the same town, of which Watters was an inmate, and she gives no satisfactory explanation of this circumstance. The reasonable inference, we think, is that her object in going there was that she might enjoy his society. She was found alone with him in a bed-room in the middle of the night under the circumstances detailed above. We would naturally expect her to deny her guilt, but we cannot believe that she is innocent. Adultery is peculiarly a crime

1. ADULTERY: evidence of: what is sufficient. of darkness. It is seldom that it can be proven by other than circumstantial evidence; and the evidence is held to be sufficient when the circumstances proven lead naturally and fairly to the conclusion of guilt, and are inconsistent with any rational theory of innocence. See *Inskeep v. Inskeep*, 5 Iowa, 204. And it seems to us that the circumstances proven in this case are of this character.

II. The charge in defendant's cross-petition is that plaintiff committed adultery with a woman by the name of Ingersoll, at Atlantic, Iowa, in the months of May, June and July, 1880. It is shown by the evidence that the woman referred to in this charge was in Atlantic during the months of February, March and April, and part of May, 1880, and that she lived with plaintiff's brother during that time. It is also shown that plaintiff was in Atlantic during a portion of that

year, but he denies that he was there during the time Mrs. Ingersoll was there. For the purpose of proving that plaintiff was in Atlantic during April and May, defendant introduced certain letters which, it is claimed, were written by him to a brother of defendant, and which purport to be dated at Atlantic during those months. Defendant testified that these letters were in the handwriting of plaintiff, and that she obtained them from her brother. There is no proof, however, as to how they came into his hands. If it were shown that they were received by him through the mails, the fact that they purport to be dated at Atlantic would be strong presumptive evidence that they were written at that place. But, in the absence of evidence that they were so received, they are not competent evidence of plaintiff's presence at Atlantic at the time at which they purport to be dated.

*2. EVIDENCE: letters to prove location of writer.*

We have examined the evidence offered in support of this charge in the cross-petition, and, without setting it out in detail, we deem it sufficient to say that in our opinion it does not establish the charge. We think, also, that the allegations of cruel and inhuman treatment in the petition and cross-petition are not proven. The judgment dismissing plaintiff's petition will be reversed, and the cause will be remanded with directions to the circuit court to enter judgment granting plaintiff a divorce. Or, at plaintiff's election, such judgment will be entered in this court.

The judgment dismissing defendant's cross-petition will be affirmed.