MAMIE FOVAL

v.

JESSE FOVAL.

*Divorce—Adultery—Evidence.*

1. It is for the jury in a given case to determine the weight and effect of the joint occupancy of one room by an unmarried couple.

2. Upon a bill filed by a husband for a divorce, adultery upon the part of the defendant being alleged, she filing a cross-bill setting up adultery, cruelty and drunkenness upon his part, this court holds that cer-

tain evidence tending to show adultery of the defendant after the filing of such bill, was improperly received; that certain instructions given were erroneous, and that the decree for the complainant can not stand.

[Opinion filed June 12, 1891.]

APPEAL from the Circuit Court of Calhoun County; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. F. M. GREATHOUSE and T. J. SELBY, for appellant.

Messrs. E. A. PINERO, J. R. WARD and H. C. WITHERS, for appellee.

PLEASANTS, J.   The bill herein was filed by appellee January 16, 1890, alleging the intermarriage of the parties about the 30th of October, 1889, their cohabitation until November 25, 1889, appellant's desertion of him on that day and subsequent commission of adultery with one Isaac Foval and others to the complainant unknown, and praying a divorce.

Her answer admitted that she married, lived with and left him as alleged, but denied the charge of adultery.   She filed a cross-bill also, on April 10, 1890, averring that his drunkenness, brutality and threats of violence against her during the brief period of their cohabitation, justified her leaving him as she did; that he never promised to change his habits or conduct toward her, nor offered to take her back or provide for her; and that soon after she left him, he went to St. Louis and procured a woman of disreputable character, pretendedly for his housekeeper, occupied the same room with her at a hotel in that city for two days, there committed adultery with her and now has her living with him at his home.   His answer thereto denied the allegation of misconduct on his part during the cohabitation and adultery afterward.   Replications having been filed, the court directed the issue to be submitted to the jury, namely, whether she or he or both had committed adultery after the marriage as charged in the bill and cross-bill respectively.   These issues they found for the appellee, and a decree in his favor for divorce was accordingly entered.

It was shown on the trial that at the time of the marriage appellee was seventy-two years of age, living on his farm in Calhoun County, with his three children, one of whom, the youngest, not yet three years old, was by his second wife, who died August 14, 1889.

Isaac Foval was his nephew, residing in St. Louis, where he was carrying on an express, drayage and message business. He was about thirty-five years of age and had been divorced from his wife in 1886; a son of thirteen and a daughter of ten years of age were living with him. Appellant, then about twenty-two years of age, was his housekeeper and clerk, as she had been for four years.

The parties first met at Isaac Foval's house, where appellee and his wife were on a visit in the preceding summer. On his invitation, Isaac with his children and appellant returned this visit in the latter part of August, in ignorance of the death of Mrs. Foval, which had so recently occurred. Isaac stayed only a day or two, but the children remained longer, and appellant, at appellee's request, still longer, in all about six weeks, taking care of his children. During that time, she says, he repeatedly proposed marriage to her, which she refused. But a few days after she left he followed her to St. Louis, and after a few days married her.

The evidence relied on as proof of the adultery charged in the original bill was the testimony of one Herman Boekmer, a blacksmith of St. Louis, who had been for some time employed by Isaac Foval to shoe his horses. He testified that he had met appellant at Isaac's house some time in 1889, and had seen her with him in his buggy going to and from his house and office; that about the 6th of March, 1890, she sent word to him (the witness) that she wanted to have a private talk with him, and, pursuant to appointment, at ten o'clock in the forenoon of that day, met him at the corner of Third and Morgan streets, whence he took her to a wholly unfurnished room in the rear of a saloon on the corner of Fifth and Carr streets, without the consent or knowledge of the proprietor or of anybody else, and there remained with her about four hours, without a table, bed, lounge or chair, or anything to

sit or lie upon, but the naked floor; that there they drank beer and had sexual intercourse; that on that occasion she asked him if Isaac Foval visited fast houses, and upon his telling her that he held his horse while he (Isaac) went into one, she got mad and said that from that time she would have nothing more to do with him; that though she and Maude, his daughter, had slept together, the sport went on just the same, but that she was now going to drop him. He further testified that he never had sexual intercourse with her before that time.

It will be observed that according to the witness the act here referred to was committed nearly two months after the original bill was filed. It therefore could not have been within the allegations of the bill. It formed no part of the case made by it. Appellant was not called upon to anticipate and meet this evidence of it. In our opinion it should not have been allowed to go to the jury. Assuming that the word " sport " in the statement attributed to her meant sexual intercourse, and that the time referred to was subsequent to the marriage, this alleged admission was only legitimate evidence in the case tending to prove the charge of adultery as made against her. To say nothing of the infirmities inherent to this kind of evidence, the character of the witness as depicted by himself, and of the story he told, and the manner in which he came to be a witness in the case, in connection with Lucas, are all circumstances worthy of serious consideration as touching his credibility.

He was wholly uncorroborated. Nothing was shown in the previous conduct of appellant that would prepare one's mind to believe his story against her. She denied it. She also denied that she ever had sexual intercourse with Isaac Foval. Isaac also denied that charge. And there were some circumstances tending to corroborate them.

Upon this state of the evidence the court instructed the jury as follows: "If you believe from the evidence in this case that Mamie Foval and Isaac Foval or Mamie Foval and Herman Boekmer had sexual intercourse with each other since the date of the marriage of Jesse Foval to Mamie Foval,

and before this suit was instituted, then the verdict should be as to that issue as follows: We, the jury, find that Mamie Foval did commit adultery since her marriage with Jesse Foval, as charged in the bill for divorce."

There was not a particle of evidence on which to base the hypothesis of adultery with Boekmer "before this suit was instituted." Boekmer himself distinctly stated that he never had sexual intercourse with appellant before March 6, 1890. We think the insertion of this hypothesis, and the evidence of adultery with Boekmer, were improper and well calculated to prejudice the case of appellant.

In support of the cross-bill it was abundantly shown that during the brief period of cohabitation of these parties, appellee was almost constantly drunk, and grossly abusive in word and act toward appellant, and that she was uniformly kind and dutiful toward him and his children. It was not until he had kicked her out of bed, had threatened, without provocation and in the presence of others, to throw her out of the wagon and break her neck, to skin her and make whip crackers of her hide, that she took advantage of his absence from home to leave him and return to St. Louis.

The night clerk of the Hotel Western, St. Louis, testified that appellee, with his little boy and a woman named Georgie Thompson *alias* Georgie Brown, occuped the same room in that hotel, containing but one bed and a lounge, two nights, January 9th and 10th, 1890, and that when he showed them to it he asked appellee if the woman was his wife and he said she was. From there they went to his home in Calhoun county, Illinois, where they slept in the same room, containing but one bed, for three weeks, and until there was talk in the neighborhood about whitecapping them. There was also evidence clearly tending to show that this woman's general reputation as to chastity was bad. That they roomed together as above stated, they both admitted, but they both denied that they occupied the same bed together or had sexual intercourse, and gave as a reason for occupying the same room that the child was strange to her and cried for his father.

In reference to the evidence the court gave the following

instruction: "The court further instructs the jury that unless the defendant, Mamie Foval, has shown by a preponderance of all the evidence, that the joint occupancy of such room by Jesse Foval and Georgie Thompson was for a criminal purpose, and that Jesse Foval did commit the adultery charged in the cross-bill, the jury shall find for the complainant, Jesse Foval, as to that issue."

We apprehend that this instruction may have misled the jury to suppose they could not properly find the fact of adultery from such joint occupancy of a room as was here shown, but that this must be supplemented by further proof of the purpose and act of the parties. It was for the jury to determine the weight and effect of such joint occupancy. That fact, of itself, had some tendency to prove the purpose, and the jury were authorized by the law to determine how strongly it so tended and whether it was or was not overcome by the other evidence. 2 Greenl. on Evidence, Sec. 46 *et seq*.

Thus the probable effect of the two instructions was to improperly strengthen the evidence against appellant and weaken that in her favor. We think she ought to have another trial.

*Reversed and remanded.*