visions shall not apply to the grounds of incorporated racing associations during a certain time in each year, and which, according to defendant's claim, justifies his business. The decisions of Brennan v. Association, (Sup.) 9 N. Y. Supp. 220, and of People v. Wynn, (Sup.) 12 N. Y. Supp. 379, affirmed 128 N. Y. 599, 28 N. E. Rep. 251, favor the contention of the defendant, provided he does, as he claims, strictly a commission business, but in neither case was the constitutional question passed upon. That question, as now presented, is a nice and complicated one; and a court of equity should not assume jurisdiction to determine it upon a mere motion, unless fully satisfied that all the necessary facts are before the court, and that the controversy between the parties is a real one, and of such a character as to necessitate the interposition of the equitable powers of the court. Owing to the insufficiency of the complaint, as already pointed out, the case does not call for the interposition of the equitable powers of the court. The accompanying affidavits cannot, and do not, enlarge the cause of action pleaded. But, independently of that consideration, the record, as a whole, does not fully and fairly present all the facts which the court should be put in possession of; and a little reading between the lines suggests a doubt whether the controversy between the parties is of such a character that a court of equity should take cognizance of it. To be entitled to any relief, the plaintiff must satisfy the court that the controversy is a real one, and that he comes into court with clean hands. All these matters can be more satisfactorily ascertained and determined at the trial of the issues, where the parties may be orally examined and cross-examined. Such trial may be had in a very short time, if the parties desire it. For the present it is sufficient to say that, in every aspect which can be properly taken, the case at bar is one in which the court will not interfere by injunction in advance of the trial. For the reason stated the order should be reversed, with $10 costs and disbursements, and plaintiff's motion for an injunction during the pendency of the action should be denied, with $10 costs.

---

(3 Misc. Rep. 411.)

## SCHREIBER v. SCHREIBER.

(Superior Court of New York City, General Term. May 1, 1893.)

DIVORCE—ADULTERY—EVIDENCE.

In an action for divorce it appeared that the parties did not live together, and that defendant and co-respondent occupied adjoining rooms. Plaintiff, suspecting defendant's infidelity to him, broke into the house at midnight with two friends; the noise made by their entry alarming defendant and co-respondent, and causing them to make an outcry. Defendant was in her nightdress and co-respondent in his undershirt, and on examination of the two rooms it was apparent that only one bed had been occupied. It also appeared that defendant had a daughter whom she had sent to board somewhere else. *Held* sufficient to show adultery.

Appeal from equity term.

Action for divorce by Albert Schreiber against Auguste Schreiber. There was judgment for plaintiff, and defendant appeals. Affirmed.

The following is the opinion of McADAM, J., in the court below:

Adultery is peculiarly a crime of darkness and secrecy. Parties are rarely surprised at it. And so it not only may, but ordinarily must, be established by circumstantial evidence. 2 Bish. Mar. & Div. (4th Ed.) § 613. The circumstances disclosed here were these: The defendant, who lived separate from her husband, occupied the first floor of the tenement No 220 East Twenty-First street, this city. There were two large rooms and four bedrooms. In September last the husband, who suspected his wife's infidelity, entered the house, accompanied by two friends, at about midnight,—broke in one of the doors. The noise alarmed the defendant and the co-respondent, who made an outcry, and two policemen ran into the room to discover the cause. Two beds were found,—one in the kitchen, the other in the bedroom adjoining. The defendant was found in her nightdress, and the co-respondent in his undershirt. The beds were examined by the four witnesses, who substantially agreed that only one of the beds had been occupied, and that had two pillows, both of which had been mussed. The bedroom door was found open, so that any one could enter from it into the kitchen, and vice versa. The defendant and co-respondent, in explanation, testified that the latter was a lodger, paying $3.50 a week for the use of the bedroom and parlor; that, though there was no lock to the bedroom door, it had been tied with a rope to prevent egress to the kitchen. The first suspicious circumstance is that the rope was not found when the officers entered, nor has its disappearance been accounted for. Next, it seems odd that this precaution should have been taken, when the lodger might have been assigned to one of the front bedrooms, where no rope or other safeguard was needed. There were no other lodgers. The parties have a sixteen year old daughter, but the defendant put her to board somewhere else. The daughter ought to have been kept at home, instead of the lodger. Her presence would have allayed suspicion. Her absence and the close proximity of the lodger created it; instead of avoiding the appearance of evil, the defendant did the very thing calculated to provoke unfavorable criticism. What followed was the natural sequence. She had no right to place herself in such a perilous position. The disinterested police officers furnish such strong corroborative proof that the judicial mind is satisfied that the relations existing between the defendant and co-respondent were of a criminal nature. Their appearance and manner upon the stand have much to do with this conclusion. The means afforded by a viva voce examination of judging of the credit due to witnesses, especially where their statements conflict, are of incalculable advantage in the investigation of truth, but not unfrequently supply the only true test by which the real character of the witnesses can be appreciated. Starkie, Ev. (9th Ed.) 728. Courts must take such evidence as the nature of the case permits,—circumstantial, direct, or positive,—and bring to bear upon it the experiences and observations of life, and, thus weighing it with prudence and care, give effect to its just preponderance. Moller v. Moller, 115 N. Y. 466, 22 N. E. Rep. 169; Auld v. Auld, (Super. N. Y.) 16 N. Y. Supp. 803. Upon the entire evidence, carefully considered, the plaintiff is entitled to a decree for absolute divorce.

Argued before SEDGWICK and FREEDMAN, JJ.

Max Bayersdorfer, for appellant.

August P. Wagener, for respondent.

PER CURIAM. Judgment affirmed, upon the opinion of the court below.