Argued 7 January, decided 1 February, 1904.

## HALL *v.* HALL.

[75 Pac. 141.]

DIVORCE — EVIDENCE OF ADULTERY.

The evidence in this case having shown appreciable familiarity between the defendant and a neighbor who lived at her home during her husband's absence, and it appearing that there was ample opportunity for meetings, the positive statement of the husband that on unexpectedly appearing at his home early in the morning he saw his wife in bed with the neighbor will outweigh the denials of the parties involved, and a divorce should be granted for adultery.

From Clackamas: THOS. A. McBRIDE, Judge.

Suit by Wm. H. Hall against Laura C. Hall for a divorce on the ground of adultery. Plaintiff appeals from a decree dismissing his suit.　　　　　　　　　　REVERSED.

For appellant there was a brief over the names of *Winfield S. Ward* and *Wm. M. Gregory*, with an oral argument by *Mr. Gregory*.

No appearance or brief for respondent.

MR. CHIEF JUSTICE MOORE delivered the opinion.

This is a suit for a divorce instituted by the husband on the ground of adultery, alleged to have been committed by the defendant with one Silas Hedges. The answer denies this accusation, and by way of cross-bill alleges that plaintiff has been guilty of cruel and inhuman treatment, rendering defendant's life burdensome, by falsely accusing and charging her with the commission of a crime as stated. The averments of new matter in the answer were

put in issue by the reply, and, the cause being tried, the suit was dismissed and plaintiff appeals. The testimony shows that the parties were married January 21, 1893, and soon thereafter moved to a homestead in Clackamas County on which the defendant lived, the plaintiff working in Portland and sending his wages to her. Silas Hedges owned land near theirs, and, having no wife, he made his home at the plaintiff's for several years, Mrs. Hall doing his washing and mending, for which service he paid her. The plaintiff, becoming suspicious, left Portland, arriving at his homestead about 1 o'clock at night, and, sleeping in an outbuilding until 7 o'clock the next morning, he went to the house, and found Hedges, as he testifies, lying in bed with his wife. He thereupon accused her of committing adultery with Hedges, who immediately left the premises. The defendant, as a witness, denies that she was guilty of any improper relations with Hedges, and he, as her witness, corroborates such statement. If the plaintiff's testimony is to be believed, an error was committed in refusing to grant the relief which he demands.

It appears from the transcript that he consulted a "medium" in Portland, in whose counsel he placed great reliance, and became very angry when told that such communications were untrustworthy. In June, 1902, his wife wrote him that one of their cows had died, and, concluding from the medium's suggestion that Hedges had killed her, he secured a pistol, and started for his homestead, threatening to shoot him, but returned without executing his purpose. In a letter written to his wife, and offered in evidence, he states that on September 8, 1902, at Portland, more than forty miles from his homestead, he could hear her and Hedges talking from 9 o'clock at night until 5 the next morning, their voices sounding as if transmitted by telephone. That the plaintiff's mind was feeble must be admitted, and it may be that his distorted reason accounts

for the statement that he found Hedges and his wife occupying the same bed. There are many circumstances, however, relating to the conduct of Hedges and Mrs. Hall, which, without detailing them, lead us to believe plaintiff told the truth, and that he is entitled to a legal separation from her. The decree of the lower court will therefore be reversed, and one entered here dissolving the bonds of matrimony heretofore existing between the parties.

REVERSED.