WALTER D. LEE

*v.*

ANNA C. LEE.

[Decided February 14th, 1910.]

1. Where, in a suit by a husband for divorce for the adultery of the wife, the evidence of the husband did not identify the co-respondent, there was no burden on the wife to produce any testimony from the alleged co-respondent.

2. In a suit by a husband for divorce on the ground of the wife's adultery, evidence *held* insufficient to support the charge.

Heard on petition, answer and proofs in open court.

*Mr. Charles H. Burtis,* for the petitioner.

*Mr. Elmer W. Demarest,* for the defendant.

GARRISON, V. C.

Having been notified that the petitioner has taken an appeal from the decree pronounced in this case, I feel it proper, in justice to the reviewing court, to express more clearly my reasons for the judgment which I reached and announced at the conclusion of the case.

I do not find it necessary to consider any questions of law, as the sole question involved is whether the petitioner has proven that' the defendant committed adultery upon all or any of the occasions alleged in the petition.

The parties were married in February, 1901. The wife was about five years older than the husband. They lived together unhappily from the beginning. Within four months after their marriage, she was compelled to leave him on account of his treatment, but returned in about two weeks at his solicitation. They then continued living together until December of the year of their marriage, 1901. At this time he was not properly supporting her, and she applied to the police court in the city of New York, where they were living, and obtained an order against him requiring him to pay her $4 a week. He then left her, but came back in the month of February, 1902, and lived with her down to October, 1902. At that time the parties agreed to separate and have since lived apart.

The petitioner alleges that the defendant committed adultery with unknown men upon the following days and places in the city of New York: Upon the 21st of February, 1904, at the Hotel Aldine; upon the 17th of September, 1906, at the New Star Hotel; and upon the 20th of October, 1906, at a house of assignation, known as Alice Gray's, on East Thirteenth street, in the city of New York. He also alleges adultery with one Novagewsky, or Reed, at dates from the month of October, 1906, on, at 3151 Broadway, in the city of New York.

In the month of May, 1903, the wife commenced a suit in the supreme court of the State of New York against the husband for maintenance and support, and in that month an order *pendente lite* was made therein requiring him to pay her $7 a week alimony, which, by agreement between counsel, was reduced to

$5 a week, and which he paid until about May, 1909, a period of six years.

The three first-mentioned charges are so similar in character, and the proof concerning each is so similar, that I propose to deal with them generally and without precise specification.

On behalf of the petitioner, there is produced his own evidence and that of his brother and a cousin, and of a private detective. With respect to each of these instances, some of these witnesses testify that they saw the defendant with a man, unknown to them, enter the place in question, at night (or, in one instance, in the afternoon), and remain there for a considerable period of time, when they saw them emerge, or, in one instance, I think, they failed to see them come out at all. They swear that these were hotels or houses of bad repute; and the inference they ask the court to draw, is that the defendant, and the man accompanying her, went to some room within the place mentioned and there committed adultery. No witness, other than those just mentioned, corroborates this testimony. There was no confronting of the defendant upon any of these occasions. No person from any of these places is produced to testify that the woman was at any of the places mentioned at the times named. There is no evidence, except inference, that the defendant and the unknown man entered any bedroom or other place (apart from casual inspection) where the act of adultery could reasonably be supposed to have been committed. But laying aside these omissions of proof, I was, and still am, unwilling to find a defendant guilty of adultery under all the circumstances disclosed with respect to these charges in this case.

It will be recalled from the previous part of this opinion that the wife, in May of 1903, had commenced an action for some marital dereliction on the part of her husband, and had secured an *ad interim* order therein requiring him to pay her alimony, and that he continued to pay her alimony under that order for a period of six years. The three offences now being dealt with are alleged to have been committed by the wife in 1904 and 1906. The present action was commenced on the 23d of January, 1909. With respect to each of these offences the husband, according to his own testimony, was either an eye witness with respect to all

of the facts that he alleges, or received immediate information concerning them. He made no move of any sort against his wife until he brought this suit in 1909. During all of the periods from 1904 to 1909, and from 1906 to 1909, he was possessed of all the proof that he now produces against his wife; and during all of that time he did not use the proof in any way to either bring a suit himself or to oppose her suit by a counter suit in New York to rid himself of the payment of $5 a week alimony, which he was paying under the New York suit.

With respect to each of the charges just dealt with, the wife does all that, under the circumstances, it seems possible for her to do, namely, denies them. At the time of the bringing of the suit, the earliest of these charges was five years old, and the others were three years old. The whole gist of the petitioner's evidence is that

"on a certain day five years ago you, the defendant, went to a certain place with a man that we cannot identify; and similarly went on two other occasions three years ago."

Since the man is not identified in any way, there is no burden on the defendant to produce any testimony from the alleged co-respondents concerning the incidents.

After the great length of time which ensued between the alleged offences and the beginning of the suit, it would only be by fortuitous chance that the defendant could account for her actions upon the days upon which each of the alleged offences is stated to have taken place.

If it were ever proper to grant a decree of divorce upon a finding of adultery where the only proof on behalf of the petitioner is that his witnesses saw the defendant, the wife, and a man unidentified, go into a hotel and not come out until morning, the accusation should follow so soon after the charge as to enable the wife to fairly meet it; or the petitioner runs the risk of having the court find, as I do in this case, that his testimony is incredible. It is upon this basis that I refused to find a proven offence against the defendant with respect to the three charges first above mentioned. I cannot believe, and do not believe, that if a husband, situated as this petitioner was, separated from his

wife, paying her alimony in a marital action pending in the court, detected his wife, while he had with him corroborating witnesses, entering into hotels and spending the night there with strange men, that he would wait, in one instance, five years, and in the other instance three years, before taking some affirmative action based upon the proofs thus in his possession. That he has not taken such action leads me to find that the testimony of the witnesses is incredible and I do not believe it.

His attempted explanation is that it took all the money that he had to pay the alimony, and therefore he had no money to prosecute a suit. This is too trifling to receive more than passing attention. He had counsel in New York in the very suit in which he was paying the alimony. He had separated from his wife by agreement, and does not pretend to have any affection for her or any desire ever to resume relations with her. He employed detectives for the express purpose of detecting her in wrong-doing. The detective, with a recklessness that casts doubt upon his entire testimony, testifies that this woman was a common solicitor of men upon the street, and furnishes corroborating testimony of the woman going to hotels with strange men. Yet the husband would have the court believe, under all these circumstances, that he obtained, at the times named, the evidence now produced. My mind is unable to reconcile such conduct with the ordinary behavior of the average person. He had every reason to wish to get rid of his wife, and to wish to be rid of the obligation of supporting her; and if he had the evidence in his possession which he now produces, it is inconceivable that he did not use it. The only conclusion that I can reach which squares itself with all the facts, is that he did not then have the evidence, and that the testimony produced before me is not worthy of belief.

It will be noted that he refers to some advice given him by his New York counsel; it would have been a very easy matter for him to have produced this counsel to state the reason, if there was any, why he did not act on behalf of this petitioner and utilize, in the New York suit, by way of defence or counter suit, the testimony which was gathered under his direction. He did not produce this attorney, nor show any reason why he did not.

This disposes of the first three charges.

The last charge, and the only one in which any co-respondent is named, is with respect to conduct with one Novagewsky. Apparently, without any justifiable reason for so doing, the petitioner attributed the name of Reed to this alleged co-respondent. The proofs show that the defendant took Novagewsky and a friend of his to board with her; that these two young men occupied a bedroom in her house, or apartment, for a period of about six months, beginning in October, 1906, and extending to the spring of 1907; that during all of that period they, each of them, lived there with her as a boarder, and paid her $10 a week for their board and lodging.

There is no proof of any improper conduct of any sort between the defendant and Novagewsky. Unless the court is going to hold, as a bald proposition, that a married woman, living away from her husband, must not have male boarders, there are no facts proven in this case which should properly lead the court to find this defendant guilty of adultery with Novagewsky.

Novagewsky himself was a witness. The other young man could not be produced, because he had gone back to Germany, and was still there at the time of the hearing, so far as the defendant knew. Novagewsky was a clean-cut, well spoken young man, of nice appearance, who gave his testimony in a manner to induce belief. He ceased to board with the defendant shortly before he was married. He is a resident of New York, and his attendance in New Jersey was therefore voluntary; and I do not find any facts which should cause me to disbelieve his testimony.

The result is that the petition should be dismissed.