Argued December 22, 1921, affirmed February 14, 1922.

# JENKINS *v.* JENKINS.

(204 Pac. 165.)

**Divorce — Degree of Proof Necessary in Suit for Divorce for Adultery Stated.**

1. In a suit for divorce because of adultery, it is sufficient if the allegations are established by a preponderance of evidence.

**Divorce — Requirements of Circumstantial Evidence to Prove Adultery Stated.**

2. For circumstantial evidence of adultery to warrant divorce, the circumstances must be such as would lead the guarded discretion of a just mind to the conclusion of the truth of the facts, and, when combined, the circumstances must tend to establish the lustful disposition of defendant toward the alleged paramour, a like disposition on the part of the latter, and the opportunity to commit the act, all of which must be reasonably approximate in point of time, and the proof must sustain an inference of actual connection.

**Divorce — Circumstances Under Which Adultery may be Inferred Stated.**

3. In suit for divorce, adultery may be inferred from the fact of occupancy by the parties of the same bed at night, or from occupancy of the same room at night, in the absence of an explanation of the incriminating circumstances.

**Judgment—Conviction or Acquittal of Party not Generally Evidence in a Civil Action.**

4. As a general rule, a judgment of conviction or acquittal of a party charged with crime cannot be given in evidence in a civil action to prove or negative the facts upon which it was rendered.

**Judgment—Acquittal in Prosecution for Adultery not Available to Defendant in Suit for Divorce on Ground of Adultery.**

5. The record in a criminal prosecution showing that the present defendant was acquitted in a prosecution for adultery cannot be introduced in a suit for divorce for adultery.

**Divorce — Relief in Appellate Court cannot be Given Party Who Does not Appeal from Decree of Trial Court.**

6. In a suit for divorce, in which defendant did not appeal from the decree of the trial court refusing divorce to both parties, no relief can be given her.

**Divorce—Evidence of Plaintiff's Mistreatment of His Wife Should be Considered in Determining His Right to Divorce.**

7. In a suit by a husband for divorce, evidence of his cruel treatment of his wife, and his expression of a desire "to get rid"

of her, should be considered in determining whether he came into equity with clean hands.

**Divorce—Plaintiff, in Suit for Divorce for Adultery, must Establish Truth of Charge.**

8.   In a suit for divorce on the ground of adultery, plaintiff must establish the truth of the charge, and defendant is required to produce no evidence to defeat the suit until a *prima facie* case is made against her.

**Divorce—Evidence Held Insufficient to Prove Adultery.**

9.   In suit by a husband for divorce, evidence *held* insufficient to prove adultery.

**Divorce—Voluntary Cohabitation Pending Proceedings for Divorce Condones Misconduct.**

10.   Voluntary cohabitation of the parties pending divorce proceedings operates as a condonation of misconduct of which complaint is made.

From Harney: GUSTAV ANDERSON, Judge.

Department 2.

This is a divorce suit. By his complaint T. E. Jenkins accused his wife, Tissie Belle Jenkins, of the commission of the crime of adultery alleged to have been committed with one Rector Arnwine in Harney County, Oregon, on April 5, 1918, and, because of such alleged lascivious conduct, prays for a decree of divorce.

The defendant wife, answering, denied the accusation made by her husband and filed a cross-complaint in which she prays for a decree of divorce, and for grounds avers, first, her husband's habitual gross drunkenness contracted since marriage and continuing for one year prior to the commencement of the suit; second, cruel and inhuman treatment, together with personal indignities rendering life burdensome. The cruel treatment complained of consisted of the crime of assault and battery committed upon her person

10.   On attack on divorce decree based on condonation pending the divorce suit, see note in L. R. A. 1917B, 462.

by her husband on frequent occasions, and the accusation of the crime of adultery preferred against her by her husband, causing her to be indicted, arraigned and tried therefor.

The lower court found as facts that prior and subsequent to the marriage of the parties to this suit plaintiff indulged habitually in grossly excessive use of intoxicating liquor; that during his drunken sprees he inflicted great physical violence upon his wife and applied vile names to her; that prior to their marriage she knew that Jenkins was an habitual drunkard but that he had promised her that he would not drink to excess; that in April, 1918, the husband publicly accused his wife of having committed the crime of adultery with one Rector Arnwine, and testified against them in the criminal prosecution following the accusation by indictment, which trial resulted in the acquittal of both; that subsequent to the accusation made by the husband, and after the commencement of the criminal prosecution based upon the charge of adultery and the commencement of the suit for divorce, the parties hereto freely resumed the marital relationship, including cohabitation and intercourse.

The court made no findings upon the charge of adultery preferred by plaintiff against his wife, for the reason that their resumption of the relationship of marriage, cohabitation and intercourse precluded each and both from rightfully demanding a decree of divorce.

As conclusions of law, the court found:

"That both parties being at fault, and each having by acts and words conclusively condoned any and all offenses alleged committed prior to the commencement of this suit, neither plaintiff nor defendant is entitled

to a decree of divorce, * *   and that plaintiff should pay all costs and disbursements.''

Based thereon, the court made and entered a decree in accordance therewith.

· From the decree Jenkins appeals, assigning error on account of the court's findings of fact and conclusions of law, and the decree dismissing the suit.   The wife failed to appeal.                    AFFIRMED.

For appellant there was a brief and oral argument by *Mr. J. W. Biggs.*

For respondent there was a brief and oral argument by *Mr. H. V. Schmalz.*

BROWN, J.—A question presented to us is the degree of proof required to establish the charge of adultery in a suit for the dissolution of the marriage contract.   There are decisions teaching that proceedings for divorce are in their nature criminal, and that the facts necessary to establish the crime charged as grounds for a divorce must be proved beyond a reasonable doubt.   It was said by the Supreme Court of Texas in *Stafford* v. *Stafford,* 41 Tex. 111:

''While the suit for a divorce is in its form a civil proceeding, it has widely different features and incidents connected with it.   In all divorce suits the defendant is charged with a breach of a solemn contract; in many cases with disgraceful and brutal conduct; in others with offenses that are known to the law either as a misdemeanor or felony.   Again, no judgment of divorce can be rendered by agreement or consent; none by confession or admission of either party; neither can a judgment be rendered by default, and, as in criminal cases, the defendant cannot be compelled to criminate himself by answering or testifying under oath.   These facts show that it is in its nature a *quasi*-criminal proceeding although not .

presented in the name of the state, nor punished by fine or imprisonment."

In *Berckmans* v. *Berckmans,* 17 N J. Eq. 453, the court said:

"The charge made by the complainant, if true, is known to our law as a crime; consequently, this prosecution partakes strongly of the nature of a criminal proceeding, so much so as to place the complainant under the necessity, not only of placing a decided preponderance of testimony in favor of the charge, but of proving it to the satisfaction of this court, beyond a reasonable doubt. I do not mean to say that it must be done by such an amount of overwhelming and unmistakable evidence as to render it impossible to be otherwise, but the evidence must be such as to satisfy the human mind, and leave the careful and guarded judgment of the court, free from any conscientious and perplexing doubts as to whether the charge be proved or not. If, after a careful examination of all the competent testimony, such doubts remain immovable, it is clearly our duty to give the defendant the benefit of such doubts, and to refuse the prayer of complainant."

1. However, a suit for dissolution of the marriage contract has, by the great weight of authority, been regarded as a civil proceeding. Our Code, concerning the burden of proof in civil cases, applies to divorce suits. In an early case in this state it was held that:

"In a suit for divorce, brought upon grounds that involve a criminal charge against the defendant, it is not necessary to prove the allegations constituting such charge beyond a reasonable doubt. It is sufficient if they be established by a preponderance of the evidence." *Smith* v. *Smith,* 5 Or. 186 (Syl.).

2. From a valuable work on trial evidence we quote with approval:

"The evidence to authorize a divorce on the ground of adultery need not be direct, but if circumstantial

the circumstances must be such as would lead the guarded discretion of a just mind to the conclusion of the truth of the facts. The circumstances are to be taken together and when combined must tend to establish the following three facts: 1. The lustful disposition of the party charged towards the alleged paramour; 2. A like disposition on the part of the latter; 3. The opportunity to commit the act. These three facts must be reasonably approximate in point of time. The proof must sustain an inference of actual connection * * ." 3 Abbott's Trial Evidence (3 ed.), pp. 2033, 2034.

In discussing the necessary degree of proof to establish the flagrant act, with adultery as the ground for divorce, courts and text-writers have frequently observed that:

"Where the facts relied on to establish adultery may import innocence as well as guilt, they must be held to import innocence." 19 C. J. 125.

The same rule is here stated:

"Circumstances susceptible of a reasonable interpretation consistent with innocence and which do not lead to guilt by a fair inference as a necessary conclusion are insufficient." 3 Abbott's Trial Evidence (3 ed.), p. 2034.

To similar effect is *Herberger* v. *Herberger,* 16 Or. 327 (14 Pac. 70).

3. Adultery has been inferred from the fact of occupancy by the parties of the same bed at night: *State* v. *Welch,* 41 Or. 35 (68 Pac. 808); *Hall* v. *Hall,* 43 Or. 619 (79 Pac. 141); *Rawson* v. *Rawson,* 37 Ill. App. 491; *Lambert* v. *Lambert,* 165 Iowa, 367 (145 N. W. 920); *Shufeldt* v. *Shufeldt,* 86 Md. 519 (39 Atl. 416); *Fischer* v. *Fischer,* 131 Mich. 441 (91 N. W. 633); *Dunn* v. *Dunn* (N. J. Ch.), 21 Atl. 466; *Leyland* v. *Leyland* (Ch.), 16 Atl. 177; *Schreiber* v. *Schreiber,* 3 Misc. Rep. 411 (23 N. Y. Supp. 299).

"Adultery may be established by the fact that the parties occupied the same room at night * * in the absence of an explanation of the incriminating circumstance." 19 C. J. 140.

To like effect see *Rickard* v. *Rickard,* 9 Or. 168. The following authorities taken from 19 C. J., p. 140, note 5, are in point: *Mosser* v. *Mosser,* 29 Ala. 313; *Holden* v. *Matteson,* 38 App. D. C. 128; *Foval* v. *Foval,* 39 Ill. App. 644; *Names* v. *Names,* 67 Iowa, 383 (25 N. W. 671); *Crane* v. *Crane,* 128 Md. 214 (97 Atl. 535); *Kerr* v. *Kerr,* 134 App. Div. 141 (118 N. Y. Supp. 801); *Langstaff* v. *Langstaff* (Ohio), Wright, 148; *Griffin* v. *Griffin* (Civ. App.), 67 S. W. 514.

The alleged act of adultery charged in the indictment is the same act averred in the complaint for divorce. The wife now invokes the verdict of not guilty returned by the jury in the criminal case for the purpose of defeating the charge of adultery contained in the complaint for divorce. The converse of her proposition has been held in *Anderson* v. *Anderson,* 4 Greenl. (Me.) 100 (16 Am. Dec. 237), where the court said:

"The record of the conviction upon an indictment for adultery is evidence in a subsequent suit for divorce brought against the defendant by his wife, both of the marriage and of the adultery." (Syl.)

Likewise, in the case of *Randall* v. *Randall,* 4 Greenl. (Me.) 326, it appears that the wife had been convicted of the crime of lewd and lascivious cohabitation with a man other than her husband. It seems that her paramour was convicted and sentenced for adultery committed with her. The court, after default was entered, admitted this evidence as sufficient proof of the crime of adultery charged as grounds for divorce: See *Griffis* v. *Sellars,* 19 N. C. 492 (31 Am. Dec. 422).

4. It is a general rule that a judgment of conviction or acquittal of a party charged with crime cannot be given in evidence in a civil action to prove or negative the facts upon which it was rendered: *Wodburn* v. *Aplin,* 64 Or. 610 (131 Pac. 516); *Spain* v. *Oregon-Washington R. & N. Co.,* 78 Or. 355 (153 Pac. 470, Ann. Cas. 1917E, 1104).

The courts have frequently cited with approval this section from a text-writer:

" * * A verdict and judgment in a criminal case, though admissible to establish the fact of the mere rendition of the judgment, cannot be given in evidence in a civil action to establish the facts on which it was rendered. If the defendant was convicted, it may have been upon the evidence of the very plaintiff in the civil action. And if he was acquitted, it may have been by collusion with the prosecutor. But beside this, and upon more general grounds, there is no mutuality; the parties are not the same; neither are the rules of decision and the course of proceeding the same. The defendant could not avail himself, in the criminal trial, of any admissions of the plaintiff in the civil action; and, on the other hand, the jury in the civil action must decide upon the mere preponderance of evidence, whereas, in order to a criminal conviction, they must be satisfied of the party's guilt beyond any reasonable doubt." 1 Greenleaf, Evidence, § 537.

It is said by another distinguished text-writer, 1 Wharton, Law of Evidence, Section 776:

"The parties in a criminal prosecution being necessarily different from those in a civil suit, and the objects of the two forms of action and the redress they afford being essentially distinct, it stands to reason that a judgment in a criminal suit cannot be used in a civil suit to establish the facts on which such judgment rests."

Jones on Evidence, Section 589, reads:

"Although the same fact may be involved in two cases, one civil and the other criminal, the parties

are necessarily different, for one action is prosecuted by an individual, the other by the state; and the judgment in one case is not generally admissible in the other to establish the facts on which it was rendered."

Again, we have the principle stated:

"Ordinarily a judgment of conviction or acquittal of a party on a criminal charge cannot be used as evidence in a civil action of the facts or matters upon which such judgment is based." 7 Ency. of Ev. 850, and list of authorities cited under note 80.

To like effect is Freeman on Judgments, Section 319.

In *Stone* v. *United States,* 167 U. S. 178, 184 (42 L. Ed. 127, 17 Sup. Ct. Rep. 778, see, also, Rose's U. S. Notes)—an action to recover the value of certain timber—it appears that the defendant had been indicted criminally for the cutting of the timber and had been acquitted. The court said:

"In our opinion the record of the criminal proceedings in the court in Idaho was not evidence to establish or disprove any of the material facts involved in the civil action."

5. The record in the criminal case showing that the jury acquitted Mrs. Jenkins can be of no avail to her in this suit for the purpose of showing her guiltless of the charge of adultery contained in the divorce complaint.

Tissie Belle Jenkins testified in this suit in the lower court that she was born in Tennessee thirty-four years prior to the trial. Her mother died when she was a little girl of the age of nine years, and during her childhood she resided "back and forth" with her relatives. She testified that she had been acquainted with Rex Arnwine all her lifetime; that they were second cousins, had attended school together, that she lived for a time at the Arnwine home, and that their families were intimately acquainted

and frequently visited with each other back in Tennessee. At the early age of fifteen years she married one Osborn. They migrated from her native state to Wyoming, thence returned to Tennessee, and later journeyed to eastern Oregon. In 1908 Osborn deserted her and their four children. Thereafter she contributed to their support by washing. She became acquainted with Jenkins at Burns, Oregon, where he conducted a brewery and later a saloon. She first refused to marry him on account of his excessive drinking of intoxicating liquors, but on his promise to refrain from indulging in anything stronger than beer, they were married. She said:

"Mr. Jenkins was very nice to me when he was sober, but I never saw him sober very much,—just four or five months after we got married and a little while before. Whenever he had been drinking he said: 'I wish I had never married you. My brothers don't like it because I married you and I am going to get rid of you.' * * Things like that. He seemed to like to tell me that, * * when he was drunk and angry."

Describing the first assault made upon her by Jenkins, she said:

"We were coming from town and he grabbed hold of me and started to choke me and then he let loose and just started in laughing, says, 'I was just funning.' I told him: 'Why, you have just hurt me awful bad.' He says: 'I was just funning.' He acted like he was kind of crazy * * . He was very much intoxicated at that time."

Concerning the second assault, she testified:

"There was a revival meeting started at the Nazarene Church * * . It was during these meetings. I wanted to go to the meetings, to preaching. He said I was took up with the preacher, * * up there lying with the preacher * * , and if I went I must stay and not come back there any more, and he would move my bed up there and put it in the back room, he said.

* * And on one occasion I"said: 'Well, I am going.' He came up and grabbed me; grabbed me by the hair of the head and struck me and knocked me down and I fell.''

This occurred in the presence of Niel Culver and Mrs. Jenkins' little girl.   Relating to the extent of the injury, she said:

''He blacked my eye, and my face was bleeding; hurt me so bad I didn't go to church * * .   He whipped me so many times I couldn't remember * * the number of them * * .

''The next occasion, as I remember, was out at the corral doing chores.   He came out * * .   He told me he was going to whip me * * ; there were people out around and I did not want them to know * * and I started to the house.   I knew he would, because he usually did when he said he would, and he took in after me.   Mrs. Hanley was in the house.   As I went through I said: 'Mrs. Hanley, Tom is going to whip me.   Stop him if you can.'   Mrs. Hanley sent for the marshal.   I went upstairs and locked the door.''

Testifying further, she said:

''I asked Tom, I says: 'You won't whip me much if I come out, will you?'   He said he would slap the face off of me, or something.   I wanted to come out before the marshal came, and I came out, and he slapped my face and pulled my hair and my nose bled. * * The first lick he missed my face and struck me on the nose, and my nose went to bleeding.   He tore my waist and bruised my arm, crushed my finger-nails into my arms so as the blood oozed out * *.

''Q. When next that you remember did he assault you?

''A. I had washed my hair and I was sitting on the lounge with my hair combed down over my face.   The little girl was there.   She says: 'Hello, Tommy,' and I had my hair combed down and I heard him swear and he made a lunge for me.   He hadn't spoken to me. He grabbed the hair of my head and twisted my head backwards like he wanted to break my neck; jerked

me off the lounge. The little girl grabbed him and pushed him back and began to scream and say: 'You are killing Mamma.' * * After he got sober he said he didn't know why he done it and he was sorry * * .

"Q. Now, when next was it that he assaulted you, that you can recall?

"A. * * On that occasion * * I made a protest about this whiskey matter. I told Mr. Jenkins * * : 'Mrs. Hanley told me * * people are talking about you and say you are selling Indians whiskey.' * * He was going to let them have it anyway, * * and I grabbed hold of the jug and we poured a gallon jug full of whiskey out, as well as I remember, the whole jug, I think, was emptied on the floor. And after the whiskey was poured out Mr. Jenkins gave me an awful whipping."

6. The testimony of Mrs. Jenkins relating to the brutal beatings inflicted upon her by her cruel, drink-crazed husband is strongly corroborated. She relates facts. She speaks the truth. We have read and considered all the testimony in the record, and it establishes beyond peradventure that Jenkins drunk was brutality personified, and that he was often very drunk. But we can afford the wife no relief as she has not appealed from the decree of the lower court.

7. However, we should consider the testimony of Jenkins' cruel treatment, together with his oft-expressed desire to "get rid of his wife," in determining whether he comes into a court of equity with clean hands.

8. We have herein shown that the verdict of not guilty in the criminal cause cannot serve as proof of the wife's innocence of the charge of adultery alleged in the complaint as the cause for a dissolution of the marriage contract. However, the law in its humanity does not demand that Mrs. Jenkins shall prove anything in order to defeat this suit, until her husband

has made a *prima facie* case against her. The law presumes her innocence. The accuser must establish the truth of the charge or his suit fails. The state has an interest in preserving the marriage contract, and it cannot be annulled without proof of the averred statutory grounds for a divorce. Having alleged as a cause of suit the commission of a felony by his wife, before he can prevail he is required to adduce evidence sufficiently intense to establish every element of the crime of adultery upon the part of the wife.

9. Measured by the rules of evidence long since established, Jenkins has utterly failed to prove the essential sexual act constituting adultery. He has proved opportunity alone. He has offered no testimony tending to establish his wife's lustful disposition towards Arnwine or anybody else, or tending to establish a like disposition on the part of Arnwine.

For about two hours on the night of April 5, 1918, Jenkins lay in wait outside the house, listening to a conversation between his wife and Arnwine, who were in the bedroom downstairs. Mrs. Jenkins had been ill for several days, and Arnwine had come to the house at the request of her daughter, for the purpose of remaining with the mother while the daughter attended a dance. When Arnwine arrived Mrs. Jenkins was in bed. According to Jenkins' own testimony, nothing unusual occurred during that time. Arnwine was then sent to the bedroom upstairs. Mrs. Jenkins says that she followed him upstairs to make up the bed which had not been made ready for occupancy. She prepared the bed. They were in the room together from fifteen minutes to half an hour. There is no proof that the bed was occupied. One of her children was sleeping in an adjoining room, and

the daughter was expected home from the dance at any moment.

We cannot assume that these cousins and childhood acquaintances carnally knew each other, merely because of the fact that they had an opportunity so to do. Indiscretion is not adultery. Suspicion is not proof. That an act of adultery might possibly, or even probably, have been committed, is not proof that adultery was committed. No court of conscience will ever adjudge that the scarlet letter "A" shall be placed upon the breast of a wife and mother in the absence of full and satisfactory proof of the truth of the charge.

As well stated by STRAHAN, J.:

"Because they were sociable the court will not presume evil, and because they had the opportunity and might have committed adultery, there is no presumption that they did. The presumptions are the other way. The law will not presume that these parties violated the criminal statutes of the state, and transcended their social duties, or were guilty of any wrong. He who alleges it must prove it. Opportunity alone will not suffice." *Herberger* v. *Herberger, supra.*

10. Based upon ample evidence contained in the record, the trial court found, in effect, that the parties hereto voluntarily resumed marital relationship, cohabitation and intercourse, after the institution of this suit. We so find. It has been said that:

"Voluntary cohabitation of the parties pending proceedings for a divorce necessarily operates as a condonation of the misconduct complained of." 19 C. J., p. 87, § 200.

The decree of the lower court is affirmed.

BURNETT, C. J., and BEAN and McCOURT, JJ., concur.