G. B. ANDERSON, Appellee, v. HANNAH ANDERSON, Appellant.

**DIVORCE:** Grounds—Adultery. The fact of adultery is not established by proof of mere *opportunity* to commit the offense.

*Appeal from Mahaska District Court.*—CHARLES A. DEWEY, Judge.

MARCH 4, 1924.

ACTION for divorce. From a decree for plaintiff, defendant appeals.—*Reversed.*

*Maxwell A. O'Brien* and *McCoy & McCoy,* for appellant.

*W. H. Keating,* for appellee.

VERMILION, J.—This is an action for divorce, on the ground of adultery. The principal facts are not in dispute, the controversy being as to the reasonable inference to be drawn from them.

Both plaintiff and defendant had been married before, and each had grown children. The plaintiff, at the time of his marriage to defendant, on May 8, 1922, had for some years resided on a small tract of land, consisting of some fifteen acres, lying near Oskaloosa, and was employed as fireman of a stationary engine, working at night. Prior to his marriage to defendant, his daughter had lived with him. The defendant was a widow, and for some years before this marriage had been employed as housekeeper by D. S. BeDillion, who, the record shows, was a widower, without children at home. The plaintiff, at the time of the marriage, was perfectly familiar with the defendant's situation, and knew that she was living at BeDillion's house as his housekeeper. Immediately after their marriage, they went to live at plaintiff's home, and, save for the time required for a delayed wedding journey, continued to reside there until July 4, 1922, when defendant left, and returned to BeDillion's house, claiming to have resumed her former position as housekeeper for wages. On the following day, the petition in this case was filed, alleging that defendant had been guilty of adultery with BeDillion.

Aside from the admitted fact that defendant, when she left plaintiff, went to BeDillion's, and has continued to reside there, with no other person living in the house, the record presents no evidence to sustain the charge of adultery. It is contended, however, that certain other circumstances are established by the evidence which, taken in connection with that fact, warrant the conclusion that their relations were adulterous. The plaintiff testified that on one occasion when BeDillion was at plaintiff's house, the defendant said that the reason she left BeDillion's was that he did not want to marry her, and that the latter replied: "I would now." This conversation was denied by both defendant and BeDillion. Plaintiff's daughter testified that, after her father had gone to work, there were frequent telephone calls for the defendant in a man's voice, and that on one occasion she heard the defendant say, "Yes," and that she had been

busy during the day, and would be in town on Saturday. Defendant and BeDillion both admitted having one telephone conversation, on Decoration Day, about flowers for the grave of defendant's mother, but denied any others. Plaintiff testified that, when he would come home from work in the morning, defendant would go to town every day; that at first she claimed to be going to the dentist's, and later he did not ask her purpose. The defendant admitted making frequent trips to town, but testified that she went to the dentist's or to visit friends. There is no testimony that she met BeDillion on these occasions, and they both testified that they did not meet. It appears that, as plaintiff went to his work Saturday nights, defendant would accompany him to town and return with him the following morning. How often this occurred, whether more than twice, is not clear. On one such occasion, defendant spent the night with friends of herself and her husband named Arnold, and on another, when Arnolds did not have room for her, went to a Mrs. Ferrell's. Arnold testified that, shortly after defendant left, BeDillion called by telephone to ask if she was there; that he followed her, and that, as she passed BeDillion's house, she stopped a minute; that the house was dark, and she went on, and through the gate at Mrs. Ferrell's. BeDillion testified that he called for the defendant at Arnold's, supposing she was there, because she and her husband had been there before they were married, and that his purpose was to inquire about some pictures which she had taken from his place, and which he had not missed at the time of his visit to plaintiff's home. If defendant spent more than two nights in town, it is not shown where she stayed, unless at Arnolds'; but it is not shown that she and BeDillion met on any of these occasions. Plaintiff accused defendant of "running around with BeDillion," and testified that she said nothing in reply; while she testified that she denied the accusation. Both defendant and BeDillion as witnesses denied positively that they had been guilty of adultery, or that any improper relations had ever existed between them, or that they had met during the time plaintiff and defendant were living together, except on the occasions referred to, at plaintiff's house and on the street in the presence of plaintiff. Concerning defendant's return to his

house, they testified, in substance, that, after she left plaintiff's home, she inquired by telephone if she could leave some furniture and things at BeDillion's; that he replied that she could, and said he wanted a ''girl;'' that she asked what he would pay her, and he said, ''$5.00 per week;'' and that that was the arrangement.

The defendant has no property or home of her own, and testified that she had no place to go when she left plaintiff. BeDillion denied that he made any effort to induce defendant to leave her husband. She testified that she left him because of his dirty and filthy personal habits, his abusive language, his failure to provide for her properly, and trouble with his son and daughter by his former marriage.

Whether she was justified in so doing is a matter with which we are not concerned. These things are only material here as they throw light upon her relations with BeDillion. The plaintiff is shown to have been an unusually hard-working man. After spending the night in his regular employment, he often put in much of the day at work on his small farm. If his personal habits, the conditions in his house at the time of defendant's arrival there and during her brief stay, and the conduct of plaintiff and his children were as described by her,— and much of what she said is not strongly denied,—the situation was, to say the least, not conducive to the maintenance of a happy home. She may not have had a legal excuse for leaving, but it is by no means clear that she did not have a strongly impelling motive for doing so, other than the alleged desire for association with BeDillion. It is quite probable that she did not do her part as a wife and housekeeper, and that many of the things of which she complains might have been overcome or remedied, had she been disposed to do so. She may have spent too much time away from home, or refused to cook for plaintiff or to properly care for the house or to accede to plaintiff's demands in other respects; but he is not asking a divorce because of any such dereliction on her part.

BeDillion is a widower, 53 years of age, with no children living with him. He has worked as a railroad brakeman, has been on the police force, and of late years has been employed as a laborer. He is not shown to have any property or means of

livelihood except his labor. It doubtless is unusual for a man in his situation to maintain a home and hire a housekeeper, and yet the admitted fact that defendant was living in his house in that capacity, under all the circumstances disclosed, is neither so contrary to human experience nor so inconsistent with innocence as to sustain a finding that their relations were adulterous. The mere fact of her living there in that capacity does not establish her guilt. It is a situation which, as has been said, society condemns, and one likely to provoke criticism (*Fisher v. Fisher* [Iowa], 182 N. W. 803) ; but without more, it is not sufficient to establish adultery. Mere opportunity, without evidence of the will or disposition to take advantage of it, will not justify the inference of guilt. *Fisher v. Fisher,* supra; *Pollock v. Pollock,* 71 N. Y. 137; *Emory v. Emory,* (Del.) 111 Atl. 540; *Pullen v. Pullen,* (N. J.) 20 Atl. 215; *Lee v. Lee,* 77 N. J. Eq. 91 (75 Atl. 562) ; *Stiefel v. Stiefel,* (N. J.) 35 Atl. 287; *Carter v. Carter,* 62 Ill. 439; *Axtell v. Axtell,* 119 N. Y. Supp. 644.

The circumstances relied upon to show the presence of an adulterous disposition and that the relation was, in fact, illicit, lack much of so doing. The unequivocal denials of defendant and BeDillion either leave the facts far from established, or the explanations made of them are, to say the least, such as to make them equally as consistent with innocence as with guilt.

It is recognized that adultery can seldom be established by other than circumstantial evidence, and such evidence is sufficient when the circumstances established fairly and naturally lead to the conclusion of guilt, and are inconsistent with any rational theory of innocence. *Inskeep v. Inskeep,* 5 Iowa 204; *Names v. Names,* 67 Iowa 383; *Aitchison v. Aitchison,* 99 Iowa 93; *Leupold v. Leupold,* 164 Iowa 595; *Wells v. Wells,* 116 Iowa 59.

No act of intimacy or familiarity between the parties is shown. Nothing more appears than the existence of opportunity to commit the offense. The evidence contains no suggestion that either defendant or BeDillion was of bad moral character. Her relations with him after she left her husband are not shown to have been in any respect different from what they were before the marriage. The plaintiff married her with full knowledge that she had been living at BeDillion's house as a housekeeper,

and during that time the Arnolds, who testified for plaintiff, were guests at the house. These circumstances tend to show that it was not then understood by those acquainted with the facts that their relations were improper.

We are impressed with the fact that this marriage was hasty and ill advised. It may be that a proper relationship will not be resumed; but these considerations are entirely aside from the single question presented by the record, whether defendant has been shown to have been guilty of adultery. After a careful examination of the record, we are of the opinion that that fact has not been established. The decree of the lower court is—*Reversed.*

ARTHUR, C. J., STEVENS and DE GRAFF, JJ., concur.